MARCUS, Circuit Judge:
Petitioner Scott Leigh Drew, a Florida inmate, appeals a decision of the district court dismissing as time-barred his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Drew argues first that his petition was not time-barred under the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Pub.L. No. 104-132, 110 Stat. 1214 (1996), 28 U.S.C. § 2241, et seq., because the statutory period should have been tolled during the pendency of his third motion for post-conviction relief in the state court. In the alternative, he asserts that any time bar should have been disregarded under the doctrine of equitable tolling. We are persuaded by neither argument and accordingly we affirm the judgment of the district court.
*1281 I.
A detailed statement of the complex procedural history of this case is essential to its resolution. On September 29, 1987, a jury in Palm Beach -County convicted Drew of first degree felony murder and armed burglary stemming from the shooting death of his ex-wife six days after their divorce became final in September 1986. Following the conviction, Drew was sentenced to life imprisonment for the murder conviction as well as a concurrent term of twenty years for the burglary. Alleging that the trial court erred in excluding important psychiatric testimony, Drew appealed his conviction. The Fourth District Court of Appeal rejected his claim and affirmed the conviction on October 11, 1989. See Drew v. State, 551 So.2d 563 (Fla.Dist.Ct.App.1989).
With his direct appeal complete, Drew embarked on an effort to obtain collateral relief that has lasted for more than a decade. On March 28, 1990, he filed his first motion for post-conviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure. The motion raised only one issue, namely that Drew was deprived of an impartial jury drawn from a cross-section of the community. The trial court and the Fourth District both denied relief.
After the first motion was denied, Drew filed a second motion under Rule 3.850 on October 14,1992. This time, he raised five issues, including three claims about the use of a taped confession as well as claims of prosecutorial misconduct and ineffective assistance of counsel. The trial court immediately rejected the motion as unclear, unspecific, and convoluted, and the Fourth District affirmed again on January 6, 1993. Next, on August 6, 1993, Drew filed a state court petition for a writ of habeas corpus on the ground that his appellate counsel had performed ineffectively. The Fourth District denied the petition on September 1, 1993.
Drew then brought his post-conviction challenge to federal court for the first time, filing a petition’ for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 16, 1994. The petition raised the five issues presented previously in the second. Rule 3.850 motion, as well as the claim of ineffective assistance of appellate counsel and a new.allegation that the jury before which he was tried did not represent a fair , cross-section of the community. The magistrate judge recommended that the case be dismissed as unexhausted because six of the seven claims had not been adequately presented to the state court. Although the magistrate judge -recognized that these claims could possibly be considered procedurally barred from federal ha-beas review due to Drew’s failure to raise them in his first post-conviction challenge, she recommended dismissal without prejudice after the state itself suggested that such a remedy was appropriate. The magistrate judge did note, however, that the claims might in fact be time-barred: “Although a Rule 3.850 motion may now be time barred, under the unusual circumstances of this case the, State courts might not apply their procedural bar.” The district court adopted the magistrate judge’s Report and Recommendation and dismissed Drew’s petition without prejudice in an order on March 28, 1995.
What happened next is relevant to the equitable tolling claim in this case. Drew asserts .that he did not receive a copy of the district court’s dismissal order until February 20, 1996, almost a year after it was issued. He says that he sent various letters to the Clerk of the Court for the Southern District of Florida inquiring about the status of his petition, but that he received no response. Finally, on January 24, 1996, the Clerk’s office sent Drew a docket report indicating that the petition had been dismissed in March 1995. In response, Drew states that he again sent *1282 letters to the Clerk asking for a copy of the order, but he claims that his letters were ignored. Eventually, Drew wrote directly to Judge King, the district court judge, who sent a copy of the order on February 20, 1996.
Drew alleges that he began working on a third Rule 3.850 motion as soon as he received the district court order dismissing his habeas petition and calling for state court exhaustion. After sending a draft to his aunt in Texas for typing and organization, Drew filed his third motion on April 23, 1996. The motion raised the five contentions included in the previous 3.850 motion. The state argued that the claims were procedurally barred because the motion was untimely under the two-year statute of limitations prescribed by Rule 3.850(b) and because the motion was successive under Rule 3.850(f). On August 25, 1996, the trial judge rejected the motion for the reasons set forth in the state’s brief. The Fourth District affirmed the denial on July 18, 1997.
On October 9, 1997, Drew filed the instant petition, which raised the same seven claims presented in his first federal habeas effort. On December 23, 1998, the magistrate judge recommended that the petition be dismissed as untimely under the AED-PA’s one-year statute of limitations. While it was clear that the petition was not filed before the April 23, 1997 deadline that applied to all individuals convicted before April 24,1996, see Hurley v. Moore, 233 F.3d 1295, 1296 (11th Cir.2000), the court confronted the question of whether the limitations period should have been tolled for the period during which the third 3.850 motion was pending in the state court. As the federal habeas corpus statute explains, the limitations period is tolled for “[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.” 28 U.S.C. § 2244(d)(2). The magistrate judge held that tolling was not in order because Drew’s state court motion had not been “properly filed” since it was deemed proeedurally barred as untimely and successive under Florida law. The Report and Recommendation went on to explain that, in some cases, a petitioner in Drew’s situation might be entitled to equitable tolling of the statute of limitations since the first petition was expressly dismissed without prejudice with instructions to exhaust in state court. However, the magistrate judge stated that such equitable relief was not appropriate in this case since Drew had allowed more than a year to elapse after the issuance of the district court’s dismissal order before he filed his third 3.850 motion. The Report and Recommendation noted that excusing Drew’s delay would contravene the AEDPA’s goal of “curtailing just such dilatory practices.”
Drew objected to the magistrate judge’s Report and Recommendation on December 31, 1998, arguing that his delay in filing the third 3.850 motion was justified .because he did not receive the district court’s dismissal order until February 1996. Drew also argued that the AEDPA limitations period should have been tolled because the third 3.850 motion was “properly filed” as it complied with state procedural rules governing filing. The district court adopted the magistrate judge’s Report and Recommendation on January 6, 1999, dismissing the petition as untimely pursuant to 28 U.S.C. § 2244(d).
II.
Drew advances two reasons why the district court erred in dismissing his petition. Initially, he claims that the AEDPA statute of limitations should have been tolled for the time during which his third 3.850 motion was pending in the state court. In the alternative, he says that he is entitled *1283 to equitable tolling because the delay in filing resulted from state court proceedings required by the order dismissing his first habeas corpus petition without prejudice.
We review de novo a district court’s decision to dismiss a petition for a writ of habeas corpus. See Delancy v. Fla. Dep't of Corr., 246 F.3d 1328, 1329 (11th Cir.2001). We also review a district court’s legal decision on equitable tolling de novo. See Helton v. Sec’y for Dep’t of Corr., 259 F.3d 1310, 1312 (11th Cir.2001). However, the district court’s determinations of the relevant facts will be reversed only if clearly erroneous. See Dorsey v. Chapman, 262 F.3d 1181, 1185 (11th Cir.2001). This standard requires us to affirm a district court’s findings of fact unless “the record lacks substantial evidence” to support that determination. Lightning v. Roadway Express, Inc., 60 F.3d 1551, 1558 (11th Cir.1995). We have squarely held that a determination regarding a party’s diligence is a finding of fact that “will not be disturbed unless clearly erroneous.” Walters v. City of Atlanta, 803 F.2d 1135, 1145 (11th Cir.1986). Finally, we review a trial court’s decision whether to conduct an evidentiary hearing on an equitable tolling claim for an abuse of discretion. See Fisher v. Gibson, 262 F.3d 1135, 1145 (10th Cir.2001); Brown v. Jones, 255 F.3d 1273, 1277 n. 4 (11th Cir.2001).
A.
The AEDPA imposes a one-year statute of limitations on all habeas corpus petitions. See 28 U.S.C. § 2244(d)(1). This rule “serves the well-recognized interest in the finality of state court judgments” and “reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review.” Duncan v. Walker, 533 U.S. 167, 179, 121 S.Ct. 2120, 2128, 150 L.Ed.2d 251 (2001). For individuals convicted prior to the enactment of the AEDPA, the statute of limitations began to run on the law’s effective date of April 24, 1996. See, e.g., Hurley, 233 F.3d at. 1296. For people in Drew’s position, therefore, federal habeas petitions ordinarily had to be filed by April 23, 1997 in order to be considered timely. However, the federal habeas statute tolls the limitations period for “[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.” 28 U.S.C. § 2244(d)(2).
Drew does not dispute that his petition would be time-barred in the absence of tolling. Instead, he asserts that the limitations period should have been tolled for the period from April 23, 1996 to July 18, 1997 because his third 3.850 motion was “properly filed” and “pending” in the state court at that time. The respondent counters that Drew’s motion was not “properly filed,” and thus not entitled to tolling, because it was deemed untimely and successive by the state court.
The Supreme Court recently analyzed the significance of Section 2244(d)(2)’s “properly filed” requirement in Artuz v. Bennett, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000). The Court explained that “[a]n application is ‘filed,’ as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record.” Id. at 8, 121 S.Ct. at 363. The opinion went on to hold that
an application is “properly filed” when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.
*1284 Id., 121 S.Ct. at 364 (emphasis in original) (footnote omitted).
Drew does not dispute the state court’s determination that his third Rule 3.850 motion was a successive petition.[1] Under Artuz, however, the fact that a motion is successive does not render it improperly filed. Before the Supreme Court explained the meaning of “properly filed,” this Court had held that the AED-PA statute of limitations should not be tolled during the pendency of a state post-conviction petition that was later deemed successive by the state court. See Weekley v. Moore, 204 F.3d 1083 (11th Cir.2000). After issuing Artuz, the Supreme Court vacated Weekley for further consideration, and on remand a panel of this Court revised its earlier decision. Holding that the successive nature of a petition does not prevent it from being properly filed, this Court explained that “the question whether an application has been ‘properly filed’ is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar.” Weekley v. Moore, 244 F.3d 874, 876 (11th Cir.2001) (quoting Artuz, 531 U.S. at 9, 121 S.Ct. at 364). Quite simply, the fact that a petition is successive does not mean that its delivery and acceptance failed to comply with applicable rules governing such matters as form, time limit, delivery location, and fees. See Artuz, 531 U.S. at 8, 121 S.Ct. at 364. A successive petition can thus toll the statute of limitations. See Delancy, 246 F.3d at 1330 n. 2 (noting under Weekley and Artuz that a “successive state court post-conviction motion constitutes a ‘properly filed’ petition for purposes of tolling AEDPA’s statute of limitations period”).
If the successive nature of the third 3.850 motion had been its only flaw, Drew would have been entitled to tolling. Unfortunately for his case, however, the petition was also untimely. As with the rule governing successive petitions, the statute of limitations for Florida post-conviction motions is set forth in Rule 3.850:
A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time. No other motion shall be filed, or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final in a noncapital case or more than 1 year after the judgment and sentence become final in a capital case in which a death sentence has been imposed unless it alleges that
(1) the facts on which the claim is predicated were unknown to the movant or the movant’s attorney and could not have been ascertained by the exercise of due diligence, or
(2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively, or
(3) the defendant retained counsel to timely file a 3.850 motion and counsel, through neglect, failed to file the motion.
Fla. R.Crim. P. 3.850(b).
In this case, there is no doubt that Drew filed his third Rule 3.850 motion well over two years after his conviction became final. Prior to Artuz, this Court held in Webster v. Moore, 199 F.3d 1256 (11th Cir.2000), that claims considered procedurally barred under state law for reasons such as untimeliness were not properly filed and could therefore not toll the AED- *1285 PA statute of limitations. Webster remains valid today. According to Artuz, a petition is not “properly filed” if it is not filed in compliance with “the time limits upon its delivery.” 531 U.S. at 8, 121 S.Ct. at 364. In a footnote, the Supreme Court explicitly left open “the question whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed.” Id. at 9 n. 2, 121 S.Ct. at 364 n. 2 (citing Smith v. Ward, 209 F.3d 383, 385 (5th Cir.2000)).
We addressed the question of exceptions in Delancy, and held that an untimely Rule 3.850 motion would be deemed properly filed if it alleged facts that would merit an exception from the timely filing requirement. In that case, the district court had dismissed Delaney’s habeas corpus petition as untimely under the AEDPA. The petitioner argued that the statute of limitations should have been tolled because he had a 3.850 motion pending in the state court during the limitations period. Even though the 3.850 motion had not been filed within the two year period established by Rule 3.850(b), we explained that the 3.850 petition was not “improperly filed” since it alleged facts that would entitle the petitioner to an exception under the Florida statute:
Under Artuz, an application is “properly filed” when its delivery and acceptance “are in compliance with the- applicable laws and rules governing filings.” Because Rule 3.850 requires only that the motion allege that facts “were unknown to the movant or the movant’s attorney and could not have been ascertained by the exercise of due diligence” we find that if Delaney’s Rule 3.850 motion in fact alleges “newly discovered evidence,” it was “properly filed.”
246 F.3d at 1331 (citations omitted).
Pursuant to Delaney, Drew’s third 3.850 motion would have been properly filed despite its untimeliness if it had alleged facts that-would trigger any of the three exceptions-set forth in the Florida statute: (1) the facts on which the claim is predicated were unknown to the movant or his attorney and could not have been ascertained with due diligence; (2) the fundamental constitutional right asserted was not established during the period provided and has since been deemed retroactive; or (3) the petitioner retained counsel to file a timely 3.850motion and counsel, through neglect, failed to do so. See Fla. R.Crim. P. 3.850(b). Even with the liberal reading appropriate for pro se pleadings, see Holsomback v. White, 133 F.3d 1382, 1386 (11th Cir.1998), nothing in Drew’s third 3.850 motion can be interpreted to allege that any of the exceptions apply.
Drew’s third 3.850 motion did not allege that the facts on which it was based were previously unknown and unascertainable through due diligence. In relation to his claim that the conviction was obtained with tampered evidence, Drew unambiguously said in the motion that he
knew this evidence had been tampered with by the State, ,and had caught their deed way before trial began, but never had a chance to prove it back then. However, at this point in time, beyond a shadow of a doubt, Defendant can prove the State tampered with his taped confession and the transcripts of said statement too.
Rule 3.850 Motion, Apr. 23, 1996, at 6. Later, in response to the 3.850 motion sheet’s question about why some claims had not been raised earlier, Drew stated that, “[although none of the grounds were presented on Direct Appeal, Defendant’s Appellate Counsel was aware of them all thru [sic] phone calls and letters from the Defendant.” Id. at 7. As these statements acknowledge, Drew has long known the facts underlying his claims. He admits *1286 that he knew the facts surrounding the evidence tampering claim even before his trial and that he knew of the other facts by the time of his direct appeal. That he was not necessarily able to prove all of the alleged violations at that time does not excuse his late filing. Rule 3.850(b)(1) clearly states that an exception applies only if the facts underlying the claim were unknown to the movant or the movant’s attorney and could not have been ascertained by the exercise of due diligence.
In the second place, Drew did not allege under 3.850(b)(2) that the fundamental constitutional right violated was not established during the limitations period. His motion included such common claims as coerced confession, evidence tampering, prosecutorial misconduct, and ineffective assistance of counsel.
Finally, under Rule 3.850(b)(3), Drew did not allege any failure by counsel “retained ... to timely file a 3.850 motion.” Drew did attempt to place blame on his appellate attorney, but this attempt is insufficient. According to Drew, appellate counsel refused to send him the necessary transcripts after the denial of his direct appeal. As a result, Drew’s brother had to make copies, which he sent to Drew in April 1990. Drew did, however, use the transcripts in preparing his second 3.850 motion in 1992. This alleged delay is of no avail for two reasons. First, Drew’s allegations are facially insufficient to merit an exception from the timely filing rule since they do not involve a claim about an attorney retained for the purpose of preparing a 3.850 motion. Second, Drew admits that, despite his attorney’s alleged delays, he had the transcripts by 1990 and even used them in 1992. It is inconceivable that the appellate attorney’s alleged neglect in any way justified the late filing of the third motion in April 1996.
Because Drew’s third 3.850 motion was untimely and did not allege facts relevant to any of the statutory exceptions to Florida’s filing deadline, the motion was not properly filed under the AEDPA. Therefore, the AEDPA’s statute of limitations cannot be tolled for the period during which that motion was pending before the state court.
B.
As an alternative to his unsuccessful claim regarding statutory tolling, Drew also argues that he is entitled to equitable tolling in light of what he considers the unusual and compelling circumstances of this case. It is by now clear in this Circuit that “[e]quitable tolling can be applied to prevent the application of the AEDPA’s statutory deadline when ‘extraordinary circumstances’ have worked to prevent an otherwise diligent petitioner from timely filing his petition.” Helton, 259 F.3d at 1312. Although “[e]quitable tolling is an extraordinary .remedy which is typically applied sparingly,” Steed v. Head, 219 F.3d 1298, 1300 (11th.Cir.2000) (citing Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 457-58, 112 L.Ed.2d 435 (1990)), it is “appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.” Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir.1999) (emphasis added). The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner. See, e.g., Helton, 259 F.3d at 1313-14 (denying equitable tolling in light of petitioner’s failure to present necessary evidence); see also Justice v. United States, 6 F.3d 1474, 1479 (11th Cir.1993) (“The burden is on the plaintiff to show that equitable tolling is warranted.”).
In order to be entitled to the benefit of equitable tolling, a petitioner must 'act with diligence, and the untimeliness of the filing must be the result of *1287 circumstances beyond his control. The magistrate judge in this case found as a fact, and the district court agreed, that Drew acted with no such diligence in pursuing his habeas corpus petition, and the determination of whether a party was diligent is a finding of fact, subject to review for clear error. See, e.g., Hale Container Line, Inc. v. Houston Sea Packing Co., 137 F.3d 1455, 1468 (11th Cir.1998) (holding that the determination of due diligence is a matter of fact and will not be overturned unless clearly erroneous); Martin v. Occupational Safety & Health Review Comm’n, 947 F.2d 1483, 1484-85 (11th Cir.1991) (holding that agency’s diligence determination is a question of fact, not a mixed question of law and fact); Walters, 803 F.2d at 1145.[2] The record before this court does not support a determination that the magistrate judge or the district court clearly erred in finding Drew dilatory.
The primary focus of Drew’s equitable tolling argument is that it would be unfair to dismiss his petition as untimely since he initially filed a timely federal habeas petition that was dismissed without prejudice. Basically, Drew claims that he should not be penalized for complying with the district court’s order that he file a third 3.850 motion before returning to federal court. What this argument ignores, however, is the extended amount of time that elapsed between the issuance of the district court’s first dismissal order on March 28, 1995, and the filing of Drew’s third 3.850 motion more than a year later on April 23, 1996. Because of this delay, Drew’s third 3.850 motion was not disposed of by the state court until July 1997. By the time Drew filed his federal habeas petition almost three months later, in October 1997, more than seventeen months had passed since the effective date of the AEDPA and more than five months had passed since the expiration of the AEDPA statute of limitations. Although Drew claims that his delay in filing the third 3.850 motion was justified by the fact that he did not receive the district court’s order until almost one year after it was issued, Drew’s own lack of diligence precludes us from equitably tolling the statute of limitations. In particular, the record reflects that, for a period of some sixteen months, Drew made virtually no effort to ascertain the status of his first habeas petition in the district court. This lack of diligence ultimately prevented Drew from filing the instant federal habeas petition until well after the AEDPA statute of limitations had expired.
In objecting to the magistrate judge’s Report and Recommendation, Drew argued that the delay in filing the third 3.850 motion was based not on his lack of diligence, but rather on the failure of the Clerk of the Court to send him the order dismissing his first habeas petition. Prior to the objection to the magistrate judge’s Report and Recommendation, the only mention of this excuse was the unelaborat-ed statement in his memorandum that “[d]he to the negligence of the Clerk of the *1288 Court of the U.S. District Court, Judge James L. King’s [March 28, 1995] order was not sent to petitioner until February 20, 1996.” It was not until Drew objected to the magistrate judge’s Report and Recommendation that he provided for the first time any allegation regarding his own efforts to learn about the case. Even then, Drew’s objections contained no detailed explication of his attempts to obtain information from the district court and listed no information about specific letters that he sent. The only evidence provided by Drew at any stage of the habeas corpus proceeding was a prison official’s response to Drew’s request for a list of all of his outgoing and incoming legal mail between March 28, 1995 and April 1, 1996. Notably, the document lists only five items: a letter sent to Vicki Shea, Drew’s aunt, on January 25, 1995; a letter received from the district court' on March 13, 1995; a letter to the district court on January 30, 1996; a letter to Judge King on February 14, 1996; and a letter to the State Attorney on April 24, 1996. Even if this record can be read to establish that Drew did not receive the district court’s order in 1995, it provides no indication of .the multiple letters of inquiry that Drew claims to have sent to the Clerk’s office during the period in question.
A lengthy delay between the issuance of a necessary order and an inmate’s receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition. See Knight v. Schofield, 292 F.3d 709 (11th Cir.2002); see also Woodward v. Williams, 263 F.3d 1135, 1143 (10th Cir.2001) (“[A] prisoner’s lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter.”); Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir.2000) (explaining that a delay in receiving notice of denial of appeal might render equitable tolling appropriate). Such tolling is not proper here. Even assuming that he did not receive the district court’s order until February 1996, Drew has provided no evidence supporting his claim that he repeatedly attempted to ascertain the status of his case from the Clerk’s office, a burden necessary to sustaining his claim of extraordinary circumstances. Indeed, far from depicting diligent efforts to learn about the case, the mail record that comprises Drew’s entire evidentiary proffer actually cuts against his claim, as it reflects only one letter sent to the Clerk’s office. And even that one letter was not mailed until January 30, 1996, a full sixteen months after the petition was filed and only three weeks before he received a copy of the order. We think that one letter is plainly an insufficient evidentiary foundation to support Drew’s claim of diligence, let alone to establish that the trial court clearly erred in finding Drew dilatory.[3]
*1289 Aside from the unavailing mail log, Drew provides no additional information about his alleged attempts, including copies of the letters, the dates on which they were sent, or any description of their contents. Furthermore, he does not claim to have taken any steps other than writing letters, such as calling the Clerk’s office by telephone or seeking help from people with the ability to go to the court personally, including the brother and aunt who had helped him with other aspects of his post-conviction challenges. In the absence of any showing of his own diligence, Drew cannot be entitled to the rare and extraordinary remedy of equitable tolling. See, e.g., Helton, 259 F.3d at 1313-14 (denying equitable tolling to inmate whose counsel misinformed him about AEDPA time limit and whose prison library allegedly lacked copies of relevant law in light of petitioner’s failure to state any “independent efforts” that he made to ascertain deadline). With nothing more than a simple allegation in a memorandum before her, we cannot conclude that the magistrate judge clearly erred in finding that Drew had not been diligent. Similarly, the district court did not clearly err in adopting the Report and Recommendation.
The dissent takes issue with the trial court’s finding of fact that Drew did not act diligently. In doing so, however, it disregards the unambiguous' and longstanding requirement that we review the district court’s findings of fact for clear error. Even if there were some reasonable debate as to Drew’s diligence (and in our view there is precious little on this record to support that debate), the dissent offers no reason to find clear error, which, after all, requires a conclusion that “the record lacks substantial evidence” to support the determination of the district court.[4] Lightning, 60 F.3d at 1558; see *1290 also In re Hillsborough Holdings Corp., 127 F.3d 1398, 1401 (11th Cir.1997) (describing clear error as “a very high standard, and one we would rarely be likely to find”). Indeed, rather than according the necessary deference to the district court’s findings of fact, the dissent engages in a de novo review of the facts, and in the process eviscerates the trial court’s central fact-finding role — an approach that has no legal basis. See, e.g., Fed.R.Civ.P. 52(a) (“Findings of fact, whether based on oral or documentary evidence, shall not be. set aside unless clearly erroneous.”); Dorsey, 262 F.3d at 1185 (“A district court’s factual findings in a habeas corpus proceeding are reviewed for clear error.”); Hale Container, 137 F.3d at 1468 (holding that factual finding regarding diligence will not be overturned unless clearly erroneous); see also Amadeo v. Zant, 486 U.S. 214, 223, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988) (“It is well settled ... that a federal appellate court may set aside a trial court’s findings of fact only if they are ‘clearly erroneous.’ ”).
“[E]ven when the district court’s findings do not rest on credibility determinations, but are based instead on physical or documentary evidence,” the Supreme Court has held that appellate courts must review these findings for clear error because “[t]he trial judge’s major role is the determination of fact, and with experience in fulfilling that role comes expertise.” Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985). Moreover, “the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is a correct one; requiring them to persuade three more judges at the appellate level is requiring too much.” Id. at 575, 105 S.Ct. at 1512. Therefore, the mere possibility that we may disagree with a district court’s fact finding does not permit us to reverse a trial court’s determination absent clear error. On the record presented to the appellate court in this case, we can find no clear error.[5]
*1292 We are also satisfied ' that there is no basis for concluding that Drew should have received an evidentiary hearing on his equitable tolling claim. Section 2244 of Title 28 of the United States Code does not require a hearing on the issue of time-bar or equitable tolling, so the decision as to whether to conduct an evidentiary inquiry is a matter left to the sound discretion of the district court. See Fisher, 262 F.3d at 1145; see also Brown, 255 F.3d at 1277 n. 4 (11th Cir.2001) (applying abuse of discretion standard to district court’s decision regarding evidentiary hearing on habeas petition). Even if Drew could somehow prove that he did not receive the district court order (and for these purposes we assume this to be so), he has offered no reason to believe that an evidentiary hearing would help him prove that he acted diligently in trying to obtain it. In fact, as discussed already, the same document that would support the claim that he did not receive the order would almost certainly defeat any claim that he sent repeated letters to the Clerk of the Court.[6] Simply put, an evidentiary hearing would be of no value to Drew even if *1293 he could show that he did not receive the district court order. In light of the wholly conclusory nature of Drew’s recently-presented allegations and in the absence of supporting evidence, the district court did not abuse its discretion in deciding not to hold a hearing.[7]
III.
Because the AEDPA statute of limitations cannot be tolled for the time during which Drew’s untimely 3.850 motion was pending before the state court and because Drew is not entitled to equitable tolling in light of his own lack of diligence, the district court properly dismissed his petition for a writ of habeas corpus. The judgment below is therefore AFFIRMED.[8]

. Rule 3.850 establishes that "[a] second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules.” Fla. R.Crim. P. 3.850(f).

. Treating a finding regarding diligence as a finding of fact is consistent with the approach taken by the majority of the circuits in both habeas corpus proceedings and other contexts. See, e.g., Montenegro v. United States, 248 F.3d 585, 591 (7th Cir.2001), overruled on other grounds by Ashley v. United States, 266 F.3d 671 (7th Cir.2001); Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1045 (5th Cir.1998); Suggs v. ServiceMaster Educ. Food Mgmt., 72 F.3d 1228, 1233 (6th Cir.1996); Windsor Mount Joy Mut. Ins. Co. v. Giragosian, 57 F.3d 50, 55-56 (1st Cir.1995); Gaw v. Comm’r of Internal Revenue, 45 F.3d 461, 465 (D.C.Cir.1995); United States v. Lewis, 980 F.2d 555, 561 (9th Cir.1992); Whaley v. Rodriguez, 840 F.2d 1046, 1051-52 (2d Cir.1988). But cf. Martinez v. Sullivan, 881 F.2d 921, 926 (10th Cir.1989) (holding that ultimate question of whether state acted diligently in trying to obtain presence of declarant for trial testimony was a mixed question of law and fact).

. Contrary to the reading offered by the dissent, Knight is clearly distinguishable. In that case, we held that a petitioner was entitled to equitable tolling of the AEDPA’s statute of limitations because, despite his diligence, he did not learn about the state court’s disposition of his state habeas corpus petition until eighteen months after the petition had been denied. At the time that he filed his motion for discretionary review of his state petition in the Supreme Court of Georgia, "Knight asked the clerk of the court when he could expect a ruling. He was informed that he would be notified as soon as a decision was issued.”292 F.3d at 710. When more than a year had passed after he had made his initial inquiry and been assured that he would receive notification from the Clerk, Knight again contacted the Clerk for information, at which time he found out that the petition had been denied eighteen months earlier. In holding that Knight was entitled to equitable tolling, a panel of this Court explained that *1289 "[i]t is understandable that Knight did not make any inquiries until February of 1998 because the Georgia Supreme Court clerk had assured him that he would be notified as soon as a decision was made.” Id. at 711 (emphasis added). The Court went on to note "that not in every case will a prisoner be entitled to equitable tolling until he receives notice. Each case turns on its own facts. In this case Knight was assured that the court would contact him, then demonstrated diligence in pursuing information when it did not do so.” Id. Unlike Knight, Drew did not contact the Clerk's office at or near the time that he filed his habeas corpus petition and, most importantly, he received no assurances from the Clerk on which to rely. Drew simply waited sixteen months before taking any steps to learn about his case. On these facts, as opposed to those in Knight, the district court did not clearly err in finding a lack of the diligence required to allow equitable tolling.

. The dissent offers only two arguments in support of the contention that the district court committed clear error. First, the dissent faults the magistrate judge for overlooking Drew's claim regarding the delay in receiving notice of the dismissal of his petition. While we have no reason to conclude that the magistrate judge overlooked the alleged delay merely because she failed to mention it explicitly in the Report and Recommendation, we also note that Drew included absolutely no supporting evidence for this claim in his submission to the magistrate judge. Notably, the prison mail log, which Drew claims supports his allegation, was never offered as evidence to the magistrate judge, but rather was proffered only when Drew objected to the magistrate judge's Report and Recommendation.
Likewise, we have no basis to hold that the district court either ignored this document or erred in considering it. The district court's order adopting the Report and Recommendation does not indicate whether the court exercised its discretion to accept the prison mail log as supplemental evidence. See 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b) (both stating that, as part of de novo review of magistrate judge’s recommendation, district judge "may ... receive further evidence”). In light of Drew’s failure to present the evidence to the magistrate judge, it would not have been an abuse of discretion for the district court to decline to consider the evidence at all. See Wofford v. Wainwright, 748 F.2d 1505, 1507 (11th Cir.1984) (explaining that Section 636(b)(1) "confers broad discretion to the district judge to hear or dispense with” additional evidence). Of course, for the reasons we *1290 discuss, it would have been completely reasonable for the district court to find the prison log unhelpful to Drew in any event.
The dissent also suggests that we should consider statistics indicating that, on average, federal courts do not dispose of habeas corpus petitions in significantly less time than it took the district court to dismiss Drew’s first petition in this case. No such statistics were ever presented to the magistrate judge or the district court, or, for that matter, to this Court, and we are reluctant indeed as an appellate court to engage in de novo fact-finding ourselves.

. In addition to arguing that the district court committed clear error, the dissent says that the diligence requirement of equitable tolling should not apply to Drew since any dilatory behavior' occurred prior to the effective date of the AEDPA’s statute of limitations. As an initial matter, we disagree with the assertion that Drew's dilatory behavior was confined entirely to the period before the AEDPA was enacted, as his sixteen-month delay in filing the third 3.850 motion delayed the filing of the instant habeas petition until more than seventeen months after the AEDPA became law and more than five months after the statute of limitations had expired. Moreover, the dissent's position ignores the crucial distinction between holding that a petition is time-barred under a statute of limitations and declining to grant the extraordinary judicial remedy of equitable tolling. While it is true that a court cannot retroactively punish Drew under the AEDPA's statute of limitations for his failure to pursue the case in a timely manner, see, e.g., Wilcox v. Fla. Dep’t of Corr., 158 F.3d 1209, 1211 (11th Cir.1998), it is equally true that Drew’s lack of diligence bars us from reaching out and granting the rare and extraordinary remedy of equitable tolling.
In asking the court to equitably toll the statute of limitations, Drew requests a judicially-crafted remedy that has always been reserved only for parties who have pursued their rights diligently and whose untimeliness is due to factors entirely beyond their control. Indeed, the requirement has its roots in the English courts of chancery, which granted equitable relief to civil fraud plaintiffs who did not learn of defendants’ fraudulent actions until after the statute of limitations had *1291 run. As early as 1714, these courts made it clear that such relief was available only if the plaintiff could not have discovered the fraud "with proper diligence.” See Gibbs v. Guild, 8 Q.B.D. 296, 304-05 (Queen's Bench 1881) (discussing cases). As one of our sister circuits has explained in discussing the English roots of equitable tolling, in order "to win the chancellor’s favor, the suitor would have to show by clear and convincing proof that he had been diligent and faultless in pursuit of his rights.” Ohio v. Peterson, Lowry, Rall, Barber & Ross, 651 F.2d 687, 692-93 (10th Cir.1981). When the Supreme Court of the United States first embraced the concept of equitable relief from a statute of limitations in Bailey v. Glover, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874), it explained that such relief would be available only "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part.”
Since the middle of the twentieth century, equitable tolling has been expanded to cover not just the belated discovery of a fraud or other cause of action, but also late filing due to misconduct by the defendant or other circumstances beyond the plaintiffs control. Beginning with the first such case, Order of R.R. Telegraphers v. Ry. Express Agency, 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788 (1944), which held that a six-year statute of limitations did not bar an action because the plaintiff was seeking administrative relief during the six years, courts have always limited such relief only to parties who have been diligent at all times. The Supreme Court explained in R.R. Telegraphers that tolling was proper because "while the litigation shows no evidence of reckless haste on the part of either party, it cannot be said that the claims were not timely pursued. Regrettable as the long delay has been it has been caused by the exigencies of the contest, not by the neglect to proceed.” Id. at 349, 64 S.Ct. at 586. As best we can tell, this principle has never been abandoned. See, e.g., Irwin, 498 U.S. at 96, 111 S.Ct. at 457-58 ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies .... But the principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect.”); Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.”); Burnett v. N.Y. Cent. R.R., 380 U.S. 424, 429, 85 S.Ct. 1050, 1055, 13 L.Ed.2d 941 (1965) (allowing equitable tolling where "plaintiff has not slept on his rights but, rather, has been prevented from asserting them”); Nat’l Cement Co. v. Fed. Mine Safety & Health Review Comm’n, 27 F.3d 526, 530-31 (11th Cir.1994) (discussing requirement of due diligence for equitable tolling to apply); Justice 6 F.3d at 1479 (describing due diligence as “necessary” for equitable tolling); Raziano v. United States, 999 F.2d 1539, 1541 (11th Cir.1993) (emphasizing the "limited availability of equitable tolling” and explaining that it is appropriate only when party has exercised due diligence); Hamilton v. Gen. Motors Corp., 606 F.2d 576, 579 (5th Cir.1979) (holding equitable tolling inappropriate where plaintiff "did nothing for several years” to pursue lawsuit).
As Justice Frankfurter explained in Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), a laches case, equitable relief is limited to diligent parties not because of the existence of any statutory requirements, but out of recognition of "historic principles of equity in the enforcement of federally-created equitable rights,” id. at 395, 66 S.Ct. at 584:
Traditionally and for good reasons, statutes of limitations are not controlling measures of equitable relief. Such .statutes have been drawn upon by equity solely for the light they may shed in determining that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair. “There must be conscience, good faith, and reasonable diligence, to call into action the powers of the court.” A federal court may not be bound by a State statute of limitation and yet that court may dismiss a suit where the plaintiffs' lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence. A suit in equity may fail "though not barred by the act of limitations.”
Id. at 396, 66 S.Ct. at 584 (quoting McKnight v. Taylor, 42 U.S. (1 How.) 161, 168, 11 L.Ed. 86 (1843)) (additional quotations and citations omitted).
The dissent fails to recognize that, by asking for equitable tolling, Drew seeks the very kind of equitable relief that has always been reserved only for parties who could not have prevented their late filings. Because Drew failed to pursue his case for a period of sixteen months, we cannot say that he has acted *1292 with the "conscience, good faith, and reasonable diligence” necessary "to call into action the powers of the court.” This conclusion is based on the longstanding, firmly rooted principle that a court cannot grant equitable tolling unless it is satisfied that the party seeking such relief has acted with diligence. The diligence requirement that we recognize has been imposed for centuries by judges applying principles of equity jurisprudence. The dissent may disagree with the district court’s determination that Drew's sixteen-month delay constituted -a lack of diligence, but we are in no position to reverse that determination absent clear error. In light of this fact pattern and the findings of the trial court, we are bound to hold that Drew’s lack of diligence unambiguously precludes the rare and extraordinary remedy of equitable tolling.
Confronted with the long line of cases requiring diligence before a statute of limitations can be equitably tolled, the dissent points to no case law supporting its contention that diligence is not necessary. Nothing in the recent opinion in Aron v. United States, 291 F.3d 708 (11th Cir.2002), changes the longstanding diligence obligation. In Aron, a panel of this Court held that it would be improper to apply retroactively the AEDPA's rule that the statute of limitations for a 28 U.S.C. § 2255 motion to vacate, set aside, or correct a sentence runs from, inter alia, "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.” 28 U.S.C. § 2255(4). Because this statutory time limit did not exist before the AEDPA was enacted on April 24, 1996, the panel explained, logically, that petitioners were not obligated to comply with the statute by exercising due diligence before its enactment. Unlike this statutory diligence requirement, however, equitable tolling has always required a showing of diligence. While we could not require a petitioner to comply with a statutory mandate that did not exist at the time of his conduct, there is nothing at all impermissible or retroactive about requiring a petitioner seeking the equitable relief of tolling to comply with judicially-crafted standards that were long and firmly established by the time of the conduct in question. Furthermore, as Judge Carnes pointed out in his concurring opinion in Aron, the portions of the majority opinion upon which the dissent in this case relies are plainly dicta because the facts of Aron did not involve a lack of diligence before the enactment of the statute. See Browning v. AT&T Paradyne, 120 F.3d 222, 225 n. 7 (11th Cir.1997) ("Since this statement was not part of any holding in the case, it is dicta, and we are not bound.by it.”) (citation omitted). Indeed, to the contrary, the petitioner in Aron displayed diligence both before and after the enactment of the statute, while in this case Drew showed precious little diligence at any time.

. Because Drew’s lack of diligence would make him ineligible for equitable tolling even if he could prove that he did not receive the district court’s order, this case is wholly distinguishable from those in which evidentiary hearings were granted for the purpose of determining whether or not a petitioner received a relevant order. See, e.g., Phillips, 216 F.3d 508. Again, even if Drew could show that he did not receive the order, he has *1293 not acted with sufficient diligence to merit equitable tolling.

. The dissent suggests that the Drew should have received an evidentiary hearing because he alleged that he sent letters to the Clerk’s office and pursued his case diligently. This suggestion ignores our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support, especially when the evidence that has been presented undermines the petitioner's claim. See, e.g., Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir.1991) ("A petitioner is not entitled to an evidentiary hearing ... 'when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.' ”) (quoting Stano v. Dugger, 901 F.2d 898, 899 (11th Cir.1990) (en banc)) (internal quotations omitted) (emphasis in original). In asserting that the district court should have granted an evidentiary hearing, the dissent disregards the purpose and deferential nature of the abuse of discretion standard. "As we have observed, the abuse of discretion standard of review recognizes that for the matter in question there is a range of choice for the district court and so long as its decision does not amount to a clear error of judgment we will not reverse even if we would have gone the other way had the choice been ours to make.” McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir.2001).

. Drew appears to suggest that the time-bar problem could have been avoided if the district court had retained jurisdiction over his first petition and held that petition in abeyance while the unexhausted claims were pursued on remand to the state court. Some courts have endorsed this approach. See Palmer v. Carlton, 276 F.3d 777, 781 (6th Cir.2002); Delaney v. Matesanz, 264 F.3d 7, 14 n. 5 (1st Cir.2001); Zarvela v. Artuz, 254 F.3d 374, 380-82 (2d Cir.2001); Freeman v. Page, 208 F.3d 572, 577 (7th Cir.2000); Calderon v. United States Dist. Ct., 134 F.3d 981, 988 (9th Cir.1998) (all endorsing retention of jurisdiction during remand over petitions containing both exhausted and unexhausted claims). But see Graham v. Johnson, 168 F.3d 762, 778-80 (5th Cir.1999) (holding that mixed petitions should be dismissed, not held in abeyance). See also Walker, 533 U.S. at 182-83, 121 S.Ct. at 2130 (Stevens, J., concurring) (suggesting that equitable tolling should be available to petitioners who acted diligently in filing for post-conviction relief but whose petitions were dismissed as untimely because prior federal habeas petitions did not toll statute of limitations). Whatever the merits of the approach, the question need not be addressed here because equitable tolling is inappropriate in light of Drew's own lack of diligence. In the end, it was Petitioner's delay, not the fact that the district court dismissed the first petition, that rendered the instant petition untimely.