[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22 2007
THOMAS K. KAHN
CLERK

No. 06-16007
Non-Argument Calendar

_____

D. C. Docket No. 03-00307-CV-DF-5

DANNY J. HICKS,

Plaintiff-Appellee,

versus

JOE FERRERO, et al.,

Defendants,

RALPH BATTLE,
JIMMY SIKES,
ARTHUR R. GORDON,
JAMES TAYLOR,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(June 22, 2007)**

Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Appellants Ralph Battle, Arthur Gordon, Jimmy Sikes, and James Taylor, state prison officials,[1] appeal interlocutorily the district court's order denying their defense of qualified immunity on inmate Danny Hicks's First Amendment retaliation claim.[2] Hicks alleged that these prison officials retaliated against him for filing grievances over prison conditions and medical care.

We review *de novo* a district court's denial of summary judgment on qualified immunity grounds, viewing the facts in a light most favorable to the plaintiff. *Bozeman v. Orum*, 422 F.3d 1265, 1267 (11th Cir. 2005). *Pro se* pleadings are entitled to liberal construction. *Drew v. Dep't of Corrs.*, 297 F.3d 1278, 1285 (11th Cir. 2002).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would

_____

[1] Ralph Battle is the warden of the prison; Arthur Gordon is the deputy warden of the prison; Jimmy Sikes is the regional director for the Georgia Department of Corrections; and James Taylor is the health services administrator for the prison.

[2] These appellants also appeal the denial of their summary judgment motion on the merits of Hicks's retaliation claim. We conclude, however, that we lack jurisdiction to consider this pendent claim because it is not "inextricably intertwined" with the qualified immunity question. *See Hudson v. Hall*, 231 F.3d 1289, 1293-94 (11th Cir. 2000). We pause to note that even if the two claims were "inextricably intertwined," we would decline to exercise our discretion to consider this merits-based claim. *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 51, 115 S. Ct. 1203, 1212 (1995).

have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)).

A public official, in order to receive qualified immunity, "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted). A public official is not entitled to qualified immunity if he or she was acting outside of his or her discretionary authority. *Id.* However, where, as here, it is undisputed that government officials were acting within their discretionary authority, the burden is on the plaintiff to demonstrate that qualified immunity is not appropriate. *Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003).

The Supreme Court has recognized a two-pronged test to determine whether qualified immunity is appropriate. A court must first address the threshold question of whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). If a court answers this threshold question affirmatively, then it must consider whether the constitutional right was "clearly established" in the specific context of the case. *Id.*

"The First Amendment forbids prison officials from retaliating against

3

prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). To prevail on a retaliation claim, a prisoner may show that: (1) he engaged in protected expression; (2) he suffered an adverse action; and (3) the adverse action was causally related to the protected expression. *See Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004) (in the context of an ADA retaliation claim); *see also Stavropoulos v. Firestone*, 361 F.3d 610, 619 (11th Cir. 2004) (discussing the interplay between § 1983 retaliation cases and Title VII retaliation cases). "A prisoner can establish retaliation by demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'" *Farrow*, 320 F.3d at 1248 (quoting *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989)).

"[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation omitted). Rather, supervisor liability only can be established when: (1) the supervisor personally participated in the alleged constitutional violation, or (2) there was a causal connection between the supervisor's actions and the alleged constitutional violation. *Id.*

"The causal connection can be established when a history of widespread

4

abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Id.* Moreover, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.* Additionally, "the causal connection may be established and supervisory liability imposed where the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" *Id.* (citation omitted).

After reviewing the record and reading the parties' briefs, we conclude that the district court properly found that Battle and Gordon were not entitled to qualified immunity, but we vacate and remand with respect to Sikes and Taylor, concluding that they were entitled to qualified immunity on Hicks's First Amendment claim.[3]

---

[3] The record on appeal demonstrates that Hicks does not allege that Sikes and Taylor were personally involved in raising his security level or that Sikes and Taylor filed negative reports on him, nor is there any evidence to support such contentions. We note that, as to the negative reports, Hicks alleged in his complaint that unidentified "counselors" filed these reports, but Sikes was a supervisor, not a counselor. Taylor is the health services administrator at Bostick Prison, not a counselor. Also, Hicks did not identify Sikes or Taylor during his deposition as prison officials who filed frivolous reports on him. Moreover, even when construed in a light most favorable to Hicks, the facts alleged do not show a "widespread" and "obvious" history of prison officials raising inmates' security levels or preparing false reports in retaliation for filing grievances. *Hartley*, 193 F.3d at 1269. Accordingly, we conclude that Hicks has failed to establish the possibility of supervisory liability here, and, thus, he has not shown that Sikes or Taylor violated a clearly established constitutional right. *See Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156.

Viewed in a light most favorable to Hicks, the facts alleged establish that Battle and Gordon violated Hicks's free speech rights by retaliating against him for filing grievances over prison conditions. *See Bozeman*, 422 F.3d at 1267. Hicks filed his first grievance in June 2003, and within one month Battle and Gordon retaliated by raising his security level from minimum to medium.

Moreover, Battle and Gordon made this decision despite the fact that: (a) Hicks's security level had been set at minimum for approximately thirty years, from 1976 until 2003; (b) prison officials had reviewed Hicks's file in 2002 and had recommended that his security level remain at this level; (c) he had a thirteen year clean record; and (d) Battle and Gordon considered the same factors presumably considered in all of the previous annual reviews – the nature of Hicks's offenses, his sentences, his attempted prison escape in 1978, the security mission of the prison, and the physical security limitations of the prison.

Accordingly, these facts, if proven true, demonstrate a First Amendment violation. Hicks was engaged in a protected activity (free speech); he suffered an adverse action (his security level was raised); and the raising of his security level was causally related to him filing grievances. *See Higdon*, 393 F.3d at 1219.

Furthermore, a reasonable prison official standing in Battle or Gordon's shoes should have realized at the time that he made the retaliatory decision that he

was violating a clearly established constitutional right. We concluded as early as 1989 – well before this decision was made – that a prisoner's First Amendment free speech rights are violated when prison officials retaliate against him or her for filing a grievance. *See Wildberger*, 869 F.2d at 1468.

In conclusion, we affirm the district court's denial of qualified immunity as to Battle and Gordon, but vacate and remand with respect to Sikes and Taylor. Sikes and Taylor were entitled to qualified immunity in their individual capacities, because the facts alleged, even if ultimately proven true, do not show that they violated a clearly established constitutional right.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**