[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11956
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-21003-JLK

MARCO NORDELO,

                                        Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

                                        Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 2, 2015)

Before WILLIAM PRYOR, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

Marco Nordelo, a Florida prisoner, appeals the dismissal of his petition for a writ of habeas corpus as untimely. *See* 28 U.S.C. § 2254. Nordelo, whose conviction was final in 1992, argued that his petition was timely filed within one year of discovering that trial counsel had been ineffective for misadvising him about the penal consequences of rejecting an offer to plead guilty. We issued a certificate of appealability to address whether Nordelo's claim of ineffective assistance was barred by the statute of limitation. *See id.* § 2244(d)(1). Because we conclude, like the district court, that "the factual predicate of [Nordelo's] claim . . . could have been discovered [earlier] through the exercise of due diligence," *see id.* § 2244(d)(1)(D), we affirm the dismissal of Nordelo's petition.

## I. BACKGROUND

In 1991, a Florida jury found Nordelo guilty of two charges of armed robbery. Fla. Stat. §§ 777.011, 787.01, 812.13. A Florida court sentenced Nordelo, an habitual violent offender, to concurrent terms of imprisonment for life. *See id.* § 775.084. At sentencing, Nordelo's attorney stated that with a sentence to "life as a habitual, if I'm not mistaken, you are talking about at least 15 years on up," and the trial court responded, "Good." Later, the trial court amended Nordelo's sentence *nunc pro tunc* to reflect that he had a minimum mandatory sentence of 15 years. *See id.* § 775.084(4)(b)(1).

Nordelo successfully challenged one of his convictions. On direct appeal, the Third District Court of Appeals vacated one count of armed robbery on the ground that Nordelo's two charges stemmed from "one comprehensive transaction to confiscate the sole victim's property." *Nordelo v. State*, 603 So. 2d 36, 38–39 (Fla. Dist. Ct. App. 1992). Later, Nordelo moved to vacate his remaining conviction, *see* Fla. R. Crim. P. 3.850, but the trial court denied Nordelo's motion.

Nordelo contested the length of his sentence. In 1995, Nordelo filed a motion to correct his sentence, which the district court denied. *See* Fla. R. Crim. P. 3.800. In his motion, Nordelo alleged that he was "sentenced to life in prison"; he was "suffering an unnecessary punishment, thinking that he will die in prison"; "[t]he unlawful sentence imposed (natural life in prison) . . . [was] a miscarriage of justice"; and he was erroneously "sentenced . . . to life in prison as a violent habitual offender" and "should be re-sentenced to . . . 12 to 17 years." In 1996, Nordelo moved to vacate his sentence and requested a reevaluation of "whether life imprisonment is just for [him]," but the trial court denied Nordelo's motion as successive and lacking merit.

On November 30, 2005, Nordelo wrote a letter "requesting the [trial] court to reconsider and mitigate [his] sentence to the original offer by the state (25 years as a habitual offender)." Nordelo stated that he was "locked up in prison for life for one count of armed robbery"; "sentenced to life in prison"; and was "doomed to

spend the rest of [his] life in prison." Nordelo mailed the letter to a prosecutor in the State Attorney's Office, who forwarded the letter to the trial court.

In 2008, Nordelo moved unsuccessfully for postconviction relief based on newly-discovered evidence. *See* Fla. R. Crim. P. 3.850(b)(1), (c). Nordelo argued that his codefendant had provided an affidavit exonerating him and that the prosecutor had presented false and misleading evidence at trial, but the trial court denied Nordelo's motion. Although the Third District Court of Appeals affirmed, *Nordelo v. State*, 47 So. 3d 854 (Fla. Dist. Ct. App. 2010), the Supreme Court of Florida quashed the decision that denied Nordelo's motion and remanded for the trial court to hold an evidentiary hearing about the affidavit, *Nordelo v. State*, 93 So. 3d 178, 187 (Fla. 2012). On remand, after Nordelo's codefendant disavowed his affidavit and testified that Nordelo had participated in the armed robbery, the trial court denied Nordelo's motion to vacate. Nordelo did not appeal.

On March 15, 2013, Nordelo filed a petition for a writ of habeas corpus in the district court. *See* 28 U.S.C. § 2254. Relevant to this appeal, Nordelo argued, for the first time, that his trial counsel was ineffective for misadvising him that he might be paroled in 15 years, which caused him to reject an offer to plead guilty and receive a sentence of 25 years. The State of Florida answered that Nordelo's petition was barred by the federal statute of limitation, *see id.* § 2244(d), and that Nordelo's claim of ineffective assistance was unexhausted and procedurally

4

defaulted. Nordelo replied that his petition was timely because he did not discover his claim of ineffective assistance until February 2013 when, after being transferred to a new prison, his classification officer told him that he was ineligible for parole.

A magistrate judge recommended that the district court dismiss Nordelo's petition as untimely. The magistrate judge determined that Nordelo "was sentenced on April 2, 1991, with credit for 286 days of time served" and "completed fifteen years of his sentence on June 20, 2005," and that he "should have reasonably discovered that he was not eligible for parole, at the latest, on June 20, 2005." Nordelo failed within "one year from that date . . . to seek habeas relief based on counsel's alleged misadvice" and that made his "petition more than six years late."

Nordelo objected to the report and reargued that the statute of limitation accrued in February 2013 when he was told that he was ineligible for parole and knew that he rejected a more favorable plea agreement based on the faulty advice of his trial counsel. *See id.* § 2244(d)(1)(D). Nordelo alleged that he thought he would be eligible for parole after "fifteen (15) minimum mandatory years were completed on June 20, 2005," and that "[d]uring his yearly progress review, [he] asked his classification officer about his parole interview now that he completed the mandatory portion of his sentence," but he "was instructed to have patience, that at this time he did not have a parole date." According to Nordelo, "[e]very

year [he] . . . inquired about his parole interview date and was always given a negative answer, but was never told that he was not under the parole system."

 "After a thorough review of the record and consideration of the [report and recommendation]" and Nordelo's objections, the district court decided that the report was "well-reasoned and accurately state[d] the law of the case." The district court adopted the report and dismissed Nordelo's petition as barred by the one-year statute of limitation.

## II. STANDARDS OF REVIEW

We review *de novo* the dismissal of a petition for a writ of habeas corpus as untimely, and we review related factual findings for clear error. *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1155 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1905 (2015). "We have squarely held that a determination regarding a party's diligence is a finding of fact that will not be disturbed unless clearly erroneous." *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1283 (11th Cir. 2002) (internal quotation marks and citation omitted). That "standard requires us to affirm a district court's findings of fact unless the record lacks substantial evidence to support [its] determination." *Id.* (internal quotation marks and citation omitted).

## III. DISCUSSION

The timeliness of Nordelo's petition turns on "the date on which the factual predicate of [his] claim . . . could have been discovered through the exercise of due

6

diligence." *See* 28 U.S.C. § 2244(d)(1)(D). Nordelo argues that he discovered in February 2013 that his counsel had misadvised him about his eligibility for parole. That information, the State of Florida argues, could have been discovered years earlier when Lawrence thought, based on his counsel's representations, that he was eligible for parole. After careful review, we conclude that, had Nordelo acted with due diligence, he could have discovered in June 2005 that he was ineligible for parole and sought collateral relief based on the ineffectiveness of trial counsel.

The Antiterrorism and Effective Death Penalty Act gives state prisoners, like Nordelo, one year to file a petition for a writ of habeas corpus in federal court. *See* 28 U.S.C. § 2244(d)(1). Generally, the statutory period runs from the date the prisoner's conviction "bec[omes] final by the conclusion of direct review." *Id.* § 2244(d)(1)(A). Because Nordelo's conviction became final before the effective date of the Act, April 24, 1996, he had a one-year grace period, or until April 24, 1997, to file his federal petition. *See Moore v. Campbell*, 344 F.3d 1313, 1319 (11th Cir. 2003). Nordelo filed his petition on March 15, 2013, more than 15 years after the grace period expired. Although Nordelo's petition is untimely under section 2244(d)(1)(A), he is not necessarily barred from pursuing habeas relief.

The Act provides four specified events from which the statute of limitation can be measured. 28 U.S.C. § 2244(d)(1). One such event is the discovery of facts that support a claim that the state prisoner has suffered a violation of a

7

constitutional right, such as the right to the effective assistance of trial counsel. *See id.* §§ 2244(d)(1)(D), 2254(a). "Section 2244(d)(1)(D) gives [state prisoners] the benefit of a later start if [the] vital facts could not have been known by the date the appellate process ended." *Cole*, 768 F.3d at 1155 (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)).

Section 2244(d)(1)(D) provides that "[t]he limitation period . . . run[s] from . . . the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). That "[t]ime begins when the prisoner knows (or through diligence could discover) the important facts, *not when the prisoner recognizes their legal significance*." *Cole*, 768 F.3d at 1157 (quoting *Owens*, 235 F.3d at 359). And because "due diligence is equivalent to a rule of inquiry notice," the prisoner is obligated to make reasonable efforts to discover the facts relevant to his claim for habeas corpus relief. *Id.* at 1156–57.

We cannot say that the district court clearly erred in finding that Nordelo could have discovered the factual predicate for his claim – that he was ineligible for parole – by June 20, 2005. Nordelo collaterally attacked his sentence in 1995 and 1996 as "unlawful" and "[un]just" and alleged that he had been "sentenced to life in prison" for the span of his "natural life" and thought "that he [would] die in prison." Nordelo asked his classification officer about a parole hearing because he

8

knew that he would complete his mandatory minimum sentence on June 20, 2005. By that date, Nordelo possessed "the important facts" about his sentence and his prospect for parole that he needed to discover whether he was eligible for parole. *See id.* at 1157. Nordelo's classification officer said that he did not have a parole interview date and to be "patient." But a reasonably diligent prisoner in Nordelo's shoes would have inquired why he was not scheduled for a parole interview and when he would be interviewed. *See id.* at 1156. Nordelo does not argue that he was prevented from ascertaining his eligibility for parole, only that the information was not volunteered by his classification officer. Had Nordelo conducted any investigation, such as questioning the officer further or requesting information from prison officials, he "could have discovered" that he was ineligible for parole. *See* 28 U.S.C. § 2244(d)(1)(D). And the district court could have found that Nordelo knew he was ineligible for parole by November 2005 when he wrote a letter asking the trial "court to reconsider and mitigate [his] sentence." In that letter, Nordelo stated that he was "locked up in prison for life for one count of armed robbery"; "sentenced to life in prison"; and was "doomed to spend the rest of [his] life in prison." Substantial evidence supports the finding that Nordelo possessed by June 20, 2005, all the facts vital to discovering that he was ineligible for parole and needed to pursue collateral relief based on the ineffectiveness of trial counsel.

The district court correctly dismissed Nordelo's petition for a writ of habeas corpus as untimely. "Section 2244(d)(1)(D) runs the statute-of-limitations clock from the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence." *Cole*, 768 F.3d at 1155 (brackets, ellipses, internal quotation marks, and citation omitted). Nordelo knew or could have discovered by June 20, 2005, that he was ineligible for parole and used that information to collaterally attack his sentence based on the ineffectiveness of trial counsel. Nordelo had one year, or until June 20, 2006, to file his petition for a writ of habeas corpus, *see* 28 U.S.C. § 2244(d)(1)(D), but failed to do so. In an attempt to salvage his petition, Nordelo argues that he is entitled to statutory tolling for the period that his motion for a new trial was pending in the state courts, *see id.* § 2244(d)(2), but the statute of limitation expired before he filed the motion in August 2008. "[O]nce a deadline has expired, there is nothing left to toll." *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004). As the district court stated, when Nordelo filed his federal petition in March 2013, it was "more than six years late."

## IV. CONCLUSION

We **AFFIRM** the dismissal of Nordelo's petition for a writ of habeas corpus as untimely.