**Frank HUIZAR, Petitioner–Appellant,**

v.

**Tom CAREY, Respondent–Appellee.**

**No. 00–56285.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 2001

Filed Dec. 14, 2001

Robison D. Harley, Jr., Santa Ana, California, argued the cause for the appellant.

Susan Sullivan Pithey, Deputy Attorney General, Los Angeles, California, argued the cause for the appellee.

Before: BRIGHT,* KOZINSKI and W. FLETCHER, Circuit Judges.

KOZINSKI, Circuit Judge:

██ Under the "prison mailbox rule" of *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), a prisoner's federal habeas petition is deemed filed when he hands it over to prison authorities for mailing to the district court. We consider how the rule applies if the petition is never received or filed by the court.

Huizar is a California state prisoner convicted of first degree murder. On April 15, 1996, he gave prison officials a state court habeas petition for mailing to the Superior Court; the prison's log of inmates' outgoing mail confirms this. On June 19 of that same year, Huizar claims he wrote to the court asking about the petition, but he got no reply. Twenty-one months later, in March 1998, Huizar says he had his sister send a second copy of the petition by certified mail, but again heard nothing back. Huizar wrote another letter to the court on August 3, 1998, relating his attempts to file a petition and asking the court to look into the matter. The court finally responded in a letter dated September 3, 1998, explaining that Huizar's petition had not been received. The petition was finally filed in the Superior Court on December 30, 1998, and denied on January 19, 1999. Huizar's subsequent petitions to the California Court of Appeal and California Supreme Court were also denied.

On January 14, 2000, Huizar filed a federal habeas petition, which the district court dismissed as time-barred. We granted a certificate of appealability ("COA") as to a single issue: whether AEDPA's statute of limitations was equitably tolled from the time Huizar first tried to file a state habeas petition on April 15, 1996. At oral argument, counsel requested that we expand the COA to include the question of whether Huizar's federal petition is timely under *Houston v. Lack.* We grant the request. *See* 28 U.S.C. § 2253(c)(1), (2); *Hiivala v. Wood,* 195 F.3d 1098, 1102–04 (9th Cir.1999) (per curiam).

Under AEDPA, prisoners have one year to file federal habeas petitions. 28 U.S.C. § 2244(d)(1). Because Huizar's conviction became final before AEDPA was enacted, his year started to run on AEDPA's effec-

---

* The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

tive date (April 24, 1996). Unless the period was tolled, he had until April 24, 1997, to file his federal petition. *Patterson v. Stewart,* 251 F.3d 1243, 1246 (9th Cir. 2001). Huizar filed his federal petition almost three years after that date.

■ Huizar argues that the period from the date he gave his first state petition to prison officials (April 15, 1996) to the date that petition was denied (January 19, 1999) does not count toward AEDPA's one-year period. *See* 28 U.S.C. § 2244(d)(2). Under this reckoning, Huizar filed his federal petition with the district court well before his year was up.[1]

Houston held that a prisoner's notice of appeal is deemed "filed at the time [he] deliver[s] it to the prison authorities for forwarding to the court clerk." 487 U.S. at 276, 108 S.Ct. 2379. *See also Koch v. Ricketts,* 68 F.3d 1191, 1192 (9th Cir.1995). While *Houston* involved a prisoner's attempt to file a notice of appeal in federal district court, we held in *Saffold v. Newland,* 250 F.3d 1262, 1268 (9th Cir.), *cert. granted,* — U.S. —, 122 S.Ct. 393, 151 L.Ed.2d 297 (2001), that the same rule applies to prisoners filing habeas petitions in both federal and state courts.[2]

■ We must thus decide whether the *Houston* rule applies even where a prisoner's petition is never filed by the court. We hold that *Houston*'s rationale applies with equal force in such a case. In developing the prison mailbox rule, *Houston* noted that prisoners "cannot take the steps other litigants can take to monitor the processing of their [documents] and to ensure that the court clerk receives and stamps [them] before" the applicable deadlines. 487 U.S. at 270–71, 108 S.Ct. 2379. Moreover, prison officials may have an incentive to delay prisoners' court filings, and prisoners will have a hard time proving that the officials did so. *Id.* at 271, 108 S.Ct. 2379. A prisoner's control over the filing of his petition ceases when he delivers it to prison officials. *Id.* at 270–71, 108 S.Ct. 2379. Whether or not the petition is actually placed in the mail, delivered to the court or filed once it arrives there, are all matters beyond the prisoner's control. A prisoner who delivers a document to prison authorities gets the benefit of the prison mailbox rule, so long as he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time.[3]

---

1. Huizar also filed habeas petitions in the California appellate courts. In *Saffold v. Newland,* 250 F.3d 1262, 1268 (9th Cir.), *cert. granted,* — U.S. —, 122 S.Ct. 393, 151 L.Ed.2d 297 (2001), we held that AEDPA's statute of limitations is tolled for the entire time a prisoner is pursuing state court remedies. Therefore, the gaps between the denial of one state petition and the filing of the next are not counted against the prisoner's year. 250 F.3d at 1267–68. Because Huizar meets AEDPA's deadline even if we count the time between the petitions against him, our ruling does not turn on this portion of the *Saffold* opinion.

2. Because this holding of *Saffold* was not included in the question presented in the cert petition, it's unlikely to be reviewed by the Supreme Court.

3. Our interpretation of *Houston* is consistent with other applications of the mailbox rule. In contract law, once an offer is made, acceptance is effective when put in the mail, and the offer can't thereafter be revoked. *Restatement (Second) of Contracts* § 63 (1979); 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 3.22, at 315 (2d ed.1998) (citing *Adams v. Lindsell,* 106 Eng. Rep. 250 (K.B.1818)). This rule applies even if the mailed acceptance never arrives. *See Worms v. Burgess,* 620 P.2d 455, 458–59 (Okla.Ct.App.1980) (an option was properly exercised when the acceptance was mailed, even though it was never received); *Palo Alto Town and Country Village, Inc. v. BBTC Co.,* 11 Cal.3d 494, 113 Cal.Rptr. 705, 521 P.2d 1097, 1100–01 (1974) (in bank) (same); Farnsworth, *supra,* § 3.22 at 319–20.

Huizar was reasonably diligent. Having received no response from the court two months after he sent in his petition, he wrote to the court—but heard nothing back. A private party, especially a prisoner, will be at a loss for what to do, other than wait, if a court fails to respond to such an inquiry. So Huizar waited an additional twenty-one months, not an unusually long time to wait for a court's decision. He then sent another copy of his petition to the court, taking extra steps to make sure it arrived by asking his sister to send it via certified mail. He still received no reply after another five months of waiting, so he sent another letter. Only after this second letter—Huizar's fourth mailing to the court—did the court respond. Huizar's steady stream of correspondence, if proven, would show reasonable diligence on his part.

 Our ruling depends, of course, on accepting the facts as alleged by Huizar. Although the prison's log of outgoing mail provides strong evidence of the date Huizar handed over his petition, the state hasn't had the chance to contest this point. Therefore, we remand to the district court "to determine when the prisoner delivered the [petition] to prison authorities." *Sud-*

duth v. Ariz. Atty. Gen., 921 F.2d 206, 207 (9th Cir.1990) (citing *Miller v. Sumner*, 872 F.2d 287 (9th Cir.1989)). The district court must also decide if and when Huizar followed up on his petition: Did Huizar send two letters to the court, as he alleges? Did his sister mail a second copy of his petition via certified mail? If the district court finds that the facts are as Huizar claims them to be, it shall deem his petition timely and consider it on the merits.

**REVERSED and REMANDED.**

---

Similarly, insurance premiums are deemed paid when mailed. *Barry v. Videojet Sys. Int'l, Inc.*, No. 93 C 6095, 1995 WL 548592, *3–*4 (N.D.Ill. Sept.12, 1995). This is true even when "the mailed premium does not reach the destination at all." 5 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* 3d § 73.62 at 73–95 (1997); *see Barry*, 1995 WL 548592 at *3–*4 (plaintiff made timely premium payment by mailing it, even though the insurer never got it).

Under the mailbox rule codified at 26 U.S.C. § 7502, tax returns or Tax Court petitions are deemed filed on the postmark date. 26 U.S.C. § 7502(a). If the Service claims it never received the document, a taxpayer can prove timely mailing by pointing to the postmark date on the certified or registered mail receipt he got when he mailed the document. 26 U.S.C. § 7502(c)(1) & (2); *Anderson v. United States*, 966 F.2d 487, 490 (9th Cir.

1992); *Carroll v. Comm'r*, 71 F.3d 1228, 1230–31 (6th Cir.1995); Internal Revenue Serv., Dep't of the Treasury, *Your Federal Income Tax (Publication 17)* 11 (2001).

The "common law mailbox rule," although similarly named, works somewhat differently: It provides that mailing something raises only a rebuttable presumption that the addressee got it. *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir.2001). If the sender shows enough evidence to raise the presumption, then the other party bears the burden of showing that the document never arrived. *Id.* at 963. Merely stating that the document isn't in the addressee's files or records—which is all that the state has done in this case—is insufficient to defeat the presumption of receipt. *See id.* at 963–64 (applying the common law mailbox rule where a retirement plan claimed it never got an employee's form for ERISA benefits).