**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EMPLOYEE PAINTERS' TRUST;
RESILIENT FLOORCOVERING PENSION
FUND; WESTERN WASHINGTON
FLOOR COVERING APPRENTICESHIP
FUND; WESTERN WASHINGTON
FLOOR COVERING INDUSTRY
PROMOTION FUND; REBOUND TRUST;
CARPET LINOLEUM & SOFT TILE
LAYERS LOCAL UNION 1238
IUPAT,
            *Plaintiffs-Appellees,*

                v.

ETHAN ENTERPRISES, INC., a
Washington corporation; REBECCA
JOHNSON, individually; GREGORY S.
TIFT, individually,
            *Defendants-Appellants.*

No. 05-35270

D.C. No.
CV-03-02904-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
November 16, 2006—Seattle, Washington

Filed March 16, 2007

Before: Pamela Ann Rymer, Marsha S. Berzon, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Berzon

3257

## COUNSEL

Randolph W. Urmston, Hendricks & Lewis, Seattle, Washington, for the appellants.

Robert A. Bohrer, Ekman, Bohrer & Thulin, Seattle, Washington, for the appellees.

## OPINION

BERZON, Circuit Judge:

Several trusts that administer employee benefit plans sued for delinquent contributions. Appellants, Ethan Enterprises and two of its officers, failed to participate in much of the litigation, and a default judgment was entered against them for roughly a million dollars. The district court denied Ethan and the individually-named defendants relief from the judgment. We affirm, albeit for a different reason with respect to each: The company violated a local rule requiring it to be represented by counsel, and it was proper to enter judgment against it. The individually-named defendants failed to answer an amended complaint properly served pursuant to Rule 5 of the Federal Rules of Civil Procedure,[1] so default was proper

---

[1] Rule 5, as here pertinent, provides:

> (a) Service: When required. Except as otherwise provided in these rules, . . . every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, . . . shall be served upon each of the parties.
>
> . . .

against them. The applicability of Rule 5 in determining proper service of an amended complaint escaped both the parties and the district court. We therefore take this opportunity to clarify that an amended complaint can often be served in the same manner as any other pleading if the original complaint is properly served and the defendants appeared in the first instance.

## BACKGROUND

Appellant corporation Ethan Enterprises ("Ethan") is a commercial floor covering company. Rebecca Johnson and Greg Tift serve as its officers. Johnson was the president and sole shareholder of Ethan from its incorporation in 2001 until 2004, while Tift managed the company from 2002 onward. Appellee trusts ("trusts") are joint labor-management trust funds that administer four separate employee benefit plans, *see* 29 U.S.C. § 1002(3), created and maintained pursuant to the terms of a Collective Bargaining Agreement (CBA) and the provisions of § 302(c) of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 186(c).[2]

The instant appeal is limited to the propriety of the default judgment, so we do not review the underlying facts except to

---

*(b) Making Service.*

. . .

    (2)   Service under Rule 5(a) is made by:

. . .

        (B) Mailing a copy to the last known address of the person served. Service by mail is complete on mailing.

FED. R. CIV. P. 5.

[2]As here pertinent, § 302(c) permits employers to contribute funds to employee trust funds notwithstanding the prohibition on employer payments to unions or union officers otherwise imposed by § 302 of the LMRA.

report that they grow out of a long-running dispute, over unfair labor practices and broken agreements, between Ethan and the Carpet, Linoleum and Soft Tile Layers Local Union No. 1238 IUPAT ("union"). *See NLRB v. Ethan Enter., Inc.*, No. 04-74905, 154 Fed. Appx. 23 (9th Cir. Nov. 14, 2005) (affirming a decision of the National Labor Relations Board (NLRB) holding that Ethan had committed an unfair labor practice by failing to honor an agreement with the union).

While the case before the NLRB was in process, the trusts filed the present action in district court seeking allegedly delinquent contributions. Ethan and the individually-named defendants filed an answer and added a counterclaim against the union, alleging that it had breached the settlement agreement at issue in the NLRB proceeding. The district court dismissed the counterclaim and set the present matter for trial.

Two months later, defendants' attorney J. Patrick Brown lodged with the court a stipulation and proposed order for withdrawal as counsel. In it, Brown certified that he had served a copy of the document on his clients, which included Ethan and both individually-named defendants. He further certified, as required by the local rules, *see* W.D. Wash. Local Rule GR 2(f)(4)(B),[3] that he

> informed Defendant Ethan Enterprises, Inc. that as a
> corporation it is required by law to be represented by

---

[3]The General Rules were amended in 2005, moving GR 2(f)(4) to GR 2(g)(4). At all relevant times below, W.D. Wash. Local Rule GR 2(f)(4)(B) read:

> If the attorney for a corporation is seeking to withdraw, the attorney shall certify to the court that he or she has advised the corporation that it is required by law to be represented by an attorney admitted to practice before this court and that failure to obtain a replacement attorney by the date the withdrawal is effective may result in the dismissal of the corporation's claims for failure to prosecute and/or entry of default against the corporation as to any claims of other parties.

> an attorney admitted to practice before this court and that failure to obtain a replacement counsel by the date the withdrawal is effective may result in dismissal of the corporation's claims for failure to prosecute and/or *entry of default against the corporation* as to any claims of other parties.

(emphasis added). The court accepted the stipulation and filed the order, which became effective immediately.

Three days after Brown withdrew as defense counsel, the trusts filed a motion to amend their complaint, which the district court granted. Between the time this motion was filed and granted, the clerk of the court received notice that a copy of the withdrawal order served on Johnson via mail had been returned as undeliverable. That notice was only the beginning of a series of failed attempts at service. A month later, mailed copies of the court's Order to Compel Inspection of Records were returned as undeliverable to both Johnson and Tift, as was the order allowing the trusts' amended complaint. Mail was but one unsuccessful avenue of contact with the individual defendants; the trusts also attempted to serve Johnson and Tift with the amended complaint in person but could not locate them.

A month after these unsuccessful attempts to serve the amended complaint in person, the trusts asked the court for permission to serve the amended complaint via publication. A summons was subsequently published in a local commercial paper six times the next month. The defendants never responded to either the summons or to the court orders issued months before. The trusts therefore moved for an entry of default, which the clerk of the court granted. Notice of the order was mailed to the defendants and, again, was returned undelivered. The district court therefore entered a default judgment against all defendants in the amount of $1,030,344.95.

According to an affidavit he filed with the district court, Tift learned of the default judgment after speaking with a union representative one month later. Two weeks after that, the defendants filed a Rule 60(b)(4) motion seeking to set aside the order and judgment of default. They argued that the judgment was void because the amended complaint was not properly served. According to defendants, service by publication was improper because insufficient efforts were made to locate them and the trusts knew where they could be found.

The district court denied the motion. It agreed with the trusts that Ethan violated W.D. Wash. Local Rule GR 2(f)(4)(B), which requires that a corporation be represented by counsel throughout litigation, thereby subjecting Ethan to default without regard to its failure to answer the amended complaint. The court upheld the default against Tift and Johnson on similar grounds, holding that their violation of W.D. Wash. Local Rule CR 41(b)(2),[4] which requires pro se litigants to update their mailing address with the court, justified default. Even if reliance on the local rules were not sufficient, the court went on to hold, the trusts complied with the rules for service by publication in Washington and, thus, the default judgment was warranted by defendants' failure to answer the amended complaint.

In response, the defendants filed a motion for reconsideration as well as a renewed Rule 60(b) motion, this time on grounds of excusable neglect and misrepresentation. Tift alleged that he never received a copy of the withdrawal order signed by the court and that he believed there had to be a

---

[4]W.D. Wash. Local Rule CR 41(b)(2) reads:

A party proceeding pro se shall keep the court and opposing parties advised as to his current address. If mail directed to a pro se plaintiff by the clerk is returned by the Post Office, and if such plaintiff fails to notify the court and opposing parties within 60 days thereafter of his current address, the court may dismiss the action without prejudice for failure to prosecute.

hearing before the Court would allow Brown to withdraw. He and the other defendants also argued that substantial evidence supported their defense and that the trusts misrepresented information upon which the default judgment was based. In particular, the defendants alleged that the employment data relied upon by the trusts for calculating the judgment was that of Tift & Young, Inc., a company it asserted had "no relationship" to Ethan.[5]

The district court denied the motion for reconsideration and subsequent Rule 60(b) motions. Appellants now appeal. Notably, after both parties filed their briefs, a panel of this court affirmed the decision of the NLRB requiring Ethan to execute a collective bargaining agreement with the union and comply with its terms, which include payment to the plaintiff trusts for benefit contributions. *Ethan Enter., Inc.*, 154 Fed. Appx. at 23.

## ANALYSIS

We review the district court's entry of the default judgment and decisions not to set aside that judgment for an abuse of discretion. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695-96 (9th Cir. 2001); *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 511-12 (9th Cir. 1986). Although we analyze the claims of the corporate defendant and the individually-named defendants separately, we agree with the district court that default was a proper sanction against both.

### A.   Default Against Ethan Enterprises

Ethan concedes that it violated Local Rule GR 2(f)(4)(B),

---

[5]This characterization of the firms' relationship is in dispute. There is separate litigation in district court in which it is alleged that Ethan is actually the alter ego or successor to Tift & Young, Inc. *See Bd. of Tr. of the Masonry Sec. Plan of Wash. v. Ethan Enter., Inc.*, No. 04-659 (W.D. Wash. filed Mar. 26, 2004).

which requires a corporation to be represented by counsel before the court. This failure suffices to support the default judgment against the corporation.

**[1]** Local Rule GR 2(f)(4)(B) is explicit that "failure to obtain a replacement attorney by the date the withdrawal [of counsel] is effective may result in . . . entry of default against the corporation as to any claims of other parties." Ethan's attorney provided it with actual notice of the rule before he withdrew, yet Ethan never retained replacement counsel. As Ethan concedes, we have recognized default as a permissible sanction for failure to comply with local rules requiring representation by counsel. *See United States v. High Country Broadcasting Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam). We find no reason to distinguish the present case.

Ethan nonetheless argues that the default judgment here was an abuse of discretion because it was based solely on its failure to answer the amended complaint, which, Ethan contends, was not properly served. Neither the record nor the law supports Ethan's position. The district court made clear that it found Ethan in default not for failure to answer the amended complaint but for failure to retain substitute counsel after Brown withdrew. Although the trusts did file an amended complaint at a time when Ethan was no longer represented by counsel, nothing about that filing itself diverged from the normal course of litigation.

**[2]** Because Ethan's violation of Local Rule GR 2(f)(4)(B) justified entry of a default judgment against it whether or not service of the amended complaint was effective, the district court did not abuse its discretion by entering a default judgment and, later, refusing to set it aside.

### B.   Default Against Tift and Johnson

In their challenge to the default judgment Tift and Johnson also rely primarily on alleged deficiencies of service. The

record is clear, however, that service of the amended complaint was effective.

**[3]** Rule 4 of the Federal Rules of Civil Procedure governs the commencement of an action and the service of process. It provides that "[a] summons shall be served together with a copy of the complaint," FED. R. CIV. P. 4(c)(1), and that

> service . . . may be effected in any judicial district of the United States: (1) pursuant to the law of the state in which the district court is located, or in which service is effected, . . . ; or (2) by delivering a copy of the summons and of the complaint to the individual personally . . . .

FED. R. CIV. P. 4(e). Rule 5, in turn, governs service of "every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants." FED. R. CIV. P. 5(a). It provides that such pleadings can be served by various means, including by "[d]elivering a copy to the person served[, m]ailing a copy to the last known address of the person served[, and i]f the person served has no known address, leaving a copy with the clerk of the court." FED. R. CIV. P. 5(b).

**[4]** Although the parties and the district court assumed — for reasons not explained — that Rule 4 governed service of the amended complaint, that is not so. Instead, it is Rule 5 that was applicable. Here is why: The amended complaint in this case qualifies as a "pleading subsequent to the original complaint,"[6] thus allowing it to be served in any manner prescribed in Rule 5(b). Plaintiffs served the amended complaint via mail, which is permitted by Rule 5(b)(2)(B). Thus, to the extent that appellants' arguments rely on claims of ineffective service, their appeal fails.

---

[6]An amended complaint clearly is "subsequent to the original complaint" and thus falls squarely within the provisions of Rule 5.

**[5]** True, there are circumstances in which amended complaints must be served pursuant to Rule 4. But this is not one of them. An amended complaint need only be served in the manner provided by Rule 4 when (1) a party is "in default for failure to appear" *and* (2) the "pleadings assert[ ] new or additional claims for relief." FED. R. CIV. P. 5(a).

**[6]** Here, the individual defendants were *not* in default for failure to appear; the court had already exercised personal jurisdiction over them. By the time the amended complaint was filed, appellants had participated actively in the litigation, filing an answer to the original complaint and contesting a disputed counterclaim. It is therefore immaterial whether or not the amended complaint asserted "new or additional claims." *See* 4B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1144 (3d ed. 2002) (noting that, "by appearing in the action the party . . . may become vulnerable to service of claims for new or additional relief under the relatively informal methods set out in Rule 5(b)").[7]

**[7]** Because Rule 5 and not Rule 4 applies, service of the amended complaint was complete when plaintiffs sent it via first class mail. *See* FED. R. CIV. P. 5(b)(2)(B) (permitting service by "[m]ailing a copy to the *last known address* of the person served") (emphasis added). Proof of such service is clear from the record, as the trusts' attorney "deposited copies

---

[7]We do not suggest that a court could not order that a formal manner of personal service was necessary for amended complaints filed after the period for filing such complaints as of right has expired. *See* FED. R. CIV. P. 15(a). Nothing in the record, however, indicates that the district court took this step. In its order allowing the amended complaint, the district court stated that "service of an Amended Complaint upon [defendants] shall be allowed." This statement comports with the "leave of court" required by Rule 15 for amendments to pleadings out of time; it does not suggest that the court found Rule 5 service inadequate. This is unsurprising. Once a party appears in a civil action it is responsible for the diligent presentation of its case, which includes, inter alia, keeping apprised of recent filings and providing the court with a correct mailing address.

of the [Amended Complaint] with the United States Post Office, directed to said Defendants at the last known address." As a result, appellants' argument that the default judgment was void for lack of service fails.

## C. Alternative Objections to Default

Notwithstanding the propriety of the default judgment, appellants argue that the district court should have set it aside because (1) their errors in failing to obtain counsel and update their addresses amounted to excusable neglect, and (2) plaintiffs committed misconduct or misrepresented the record. We review for an abuse of discretion and affirm.

### 1. Excusable Neglect

**[8]** When a default judgment is challenged on grounds of excusable neglect, three factors inform the district court's exercise of discretion: (1) "whether the defendant's culpable conduct led to the default"; (2) "whether the defendant has a meritorious defense"; and (3) "whether reopening the default judgment would prejudice the plaintiff." *TCI Group Life Ins. Plan*, 244 F.3d at 696; *see also Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam). Because appellants were culpable with respect to the default and have no meritorious defense, the district court acted well within its discretion when it refused to set aside the judgment.

**[9]** In this circuit, "a defendant's conduct [is] culpable for purposes of the *Falk* factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *TCI Group Life Ins. Plan*, 244 F.3d at 698. Such a deliberate failure can be found where, as here, defendants provide the opposing party with an incorrect address, thereby precluding normal service of process. *See id.* at 698-99 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 815 (9th Cir. 1985)). As in *Pena*, the defendants' failure to update their address made it difficult for the oppos-

ing party to contact them. This error was hardly "excusable," as defendants reasonably should have expected contact with the trusts in the course of ongoing litigation, particularly during the discovery period. Moreover, Ethan's failure to secure replacement counsel, as required by the local rules, certainly cannot be described as "excusable neglect" given clear notice to Ethan of the need to obtain counsel and Ethan's unexplained delay in doing so. *See, e.g.*, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) ("[M]istakes construing the rules do not usually constitute 'excusable' neglect."); *Pincay v. Andrews*, 389 F.3d 853, 858 (9th Cir. 2004) (en banc) (describing a misreading of court rules as "egregious" but affirming the district court's consideration of other factors).

**[10]** Nor do appellants have a meritorious defense. *See Haw. Carpenters' Trust Funds*, 794 F.2d at 513 ("[A]s a prerequisite to vacating an entry of default," a party in default "is required to make some showing of a meritorious defense[.]"). Although Ethan, Johnson, and Tift argued in their briefs that they have not signed the CBA and would have a meritorious defense if the Ninth Circuit reversed the NLRB's decision, appellants recently lost their NLRB appeal. *See Ethan Enter., Inc.*, 154 Fed. Appx. at 23. As a result, Ethan must execute the CBA and satisfy its terms, including payment of contributions to the plaintiff trusts. Given the preclusive effect of this recent decision on the primary merits issue in the present case — whether Ethan is in fact bound by a collective bargaining agreement with the union requiring contributions to the trusts — "[t]o permit reopening of the case . . . would cause needless delay and expense to the parties and court system." *Haw. Carpenters' Trust Funds*, 794 F.2d at 513.

### 2.  *Plaintiff Misconduct*

Appellants also argue that the default judgment should be set aside because of misconduct and misrepresentation by the trusts. Appellants, however, have provided no evidence of

misconduct by the trusts, let alone the "clear and convincing" evidence required to support such a charge. *See De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000).

**[11]** As described above, the trusts served notice of the default on the defendants in the same manner as they had served previous pleadings. Nothing in the record suggests that the trusts defrauded the court with respect to their claims. Similarly, no evidence suggests that the trusts misrepresented the contributions owed to them. Rather, it was appellants' failure to participate in the litigation that forced the court to rely on indirect payroll information to calculate the amount of the judgment. Prior to the default, the district court entered an order to compel inspection of payroll records, but the copy of the order sent to defendants was returned to the court as undeliverable. So it was defendants who were responsible for the absence of direct data concerning the contributions due.

**[12]** Given the lack of evidence of misconduct or misrepresentation, appellants fail to meet their burden under Rule 60(b)(3).

**AFFIRMED.**