**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STEVEN PELESASA FUE,
*Petitioner-Appellant*,

v.

MARTIN BITER, Warden,
*Respondent-Appellee*.

No. 12-55307

D.C. No.
2:11-cv-02436-
DMG-MRW

OPINION

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Submitted August 28, 2014[*]
Pasadena, California

Filed January 15, 2016

Before: Diarmuid F. O'Scannlain, Johnnie B. Rawlinson,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Rawlinson
Dissent by Judge Bybee

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Habeas Corpus

Affirming the district court's dismissal, as untimely, of a California state prisoner's habeas corpus petition, the panel held that the prisoner failed to act with the requisite diligence to justify application of the equitable tolling doctrine where he waited fourteen months before inquiring into the status of his state habeas petition.

Dissenting, Judge Bybee wrote that, since it is only the extraordinary case in which the state court fails to send notice of a decision, a rule requiring prisoners to seek early and frequent updates about the status of a pending petition would be a waste of time for prisoners and a heavy administrative burden for state courts.

### COUNSEL

Sean K. Kennedy, Federal Public Defender, Michael Tanaka, Deputy Federal Public Defender, Los Angeles, California, for Petitioner-Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Yun K. Lee, Deputy Attorney General, Los Angeles, California, for Respondent-Appellee.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

RAWLINSON, Circuit Judge:

California state prisoner Steven Pelesasa Fue (Fue) appeals the district court's dismissal, as untimely, of his petition for a writ of habeas corpus, filed pursuant to the Antiterrorism and Effective Death Penalty Act (the Act), 28 U.S.C. § 2254. Fue contends that he is entitled to equitable tolling because the state court never notified him that it had denied his state habeas petition. The district court held that Fue was not entitled to equitable tolling because he did not act diligently in waiting fourteen months before inquiring into the status of his petition. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we agree with the district court's conclusion that Fue failed to act with the requisite diligence.[1]

## I.  BACKGROUND

Fue's habeas petition challenges his 2007 convictions for armed carjacking. Under the Act, Fue had one year from the date his convictions became final to file a federal habeas corpus petition. *See* 28 U.S.C. § 2244(d). His convictions became final on or about May 19, 2009, ninety days after the California Supreme Court denied his petitions for review on direct appeal. *See Sossa v. Diaz*, 729 F.3d 1225, 1227 (9th Cir. 2013). Six months later, on November 19, 2009, Fue

---

[1] We have no quarrel with the principle that equitable tolling may require us to calculate time with the awareness that special treatment may be warranted "in an appropriate case." *Dissenting Opinion*, p. 13 (quoting *Holland v. Florida*, 560 U.S. 631, 650 (2010). We simply disagree that Fue's case is "special."

filed a state petition for a writ of habeas corpus in the California Supreme Court, thereby tolling the one-year limitations period while his state post-conviction petition was pending. *See* 28 U.S.C. § 2244(d)(2). On May 20, 2010, the California Supreme Court denied the state habeas petition. What happened next is relevant to Fue's equitable tolling claim.

According to Fue, the California Supreme Court never notified him that it had denied his state habeas petition. After waiting fourteen months for a decision, on January 31, 2011, Fue mailed a letter to the California Supreme Court to inquire into the status of his case. By letter dated February 3, 2011, the Clerk of the California Supreme Court informed Fue that his habeas case was no longer active.[2]

Fue's federal habeas petition, filed on March 7, 2011, was dismissed as untimely. In this timely appeal, Fue contends that the district court misapplied the doctrine of equitable tolling when determining the timeliness of his federal habeas petition. We do not agree.

## II. STANDARDS OF REVIEW

We review a district court's dismissal of a petition for a writ of habeas corpus for failure to comply with the applicable one-year statute of limitations *de novo*. *See Sossa*, 729 F.3d at 1229. If the underlying facts are undisputed, the question whether the statute of limitations should be

---

[2] The dissent takes the position that this letter was deceptive. *See Dissenting Opinion*, p. 18. We disagree. Informing a habeas petitioner that his case is no longer active conveys that there are no pending matters before the court.

equitably tolled is reviewed *de novo*. *See id*.; *see also Gibbs v. LeGrand*, 767 F.3d 879, 890–93 (9th Cir. 2014) (reviewing the district court's diligence determination *de novo*). Otherwise, a district court's findings of fact are reviewed for clear error. *See Sossa*, 729 F.3d at 1229.

## III.  DISCUSSION

A prisoner seeking equitable tolling bears the burden of showing (1) that an extraordinary circumstance prevented the timely filing of his habeas petition and (2) that he diligently pursued his rights. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). Lack of knowledge that the state court has reached a decision on his state habeas petition may constitute an extraordinary circumstance so as to justify equitable tolling if the prisoner has acted diligently. *See Ramirez v. Yates*, 571 F.3d 993, 997–98 (9th Cir. 2009). In order to determine whether Fue is entitled to such tolling, we consider "(1) on what date [Fue] actually received notice; (2) whether [Fue] acted diligently to obtain notice; and (3) whether the alleged delay of notice caused the untimeliness of his filing and made a timely filing impossible." *Id*. at 998 (citations omitted).

Only the second consideration is at issue in this appeal. We must decide whether a prisoner who waits fourteen months before inquiring into the status of his state habeas petition has acted with sufficient diligence to apprise himself of the status of his pending proceedings. While the availability of equitable relief commends a flexible, case-by-case approach, we permissibly look to how other courts have evaluated various delays to inform our reasonable diligence inquiry. *Holland*, 560 U.S. at 650 (recognizing that "courts of equity can and do draw upon decisions made in other similar cases"). A brief survey of similar cases in other

circuits reflects that courts have generally determined that a prisoner who delayed fewer than ten months before inquiring into the status of his case acted with sufficient diligence. *See Diaz v. Kelly*, 515 F.3d 149, 155–56 (2d Cir. 2008) (nine months); *see also Miller v. Collins*, 305 F.3d 491, 495–96 (6th Cir. 2002) (same). On the other hand, a prisoner who delayed sixteen months and more was deemed not to have acted with sufficient diligence. *See LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005) (twenty-one months); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002) (nearly two years); *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1288 (11th Cir. 2002) (sixteen months). While not dispositive, Fue's delay of fourteen months before inquiring into the status of his state habeas petition is closer to the majority of cases finding a lack of reasonable diligence.

Unlike our dissenting colleague, we easily see how waiting fourteen months before inquiring about the status of his state court petition was unreasonable in these circumstances. Although no statute or rule requires prisoners to seek periodic updates from the California Supreme Court, reasonable diligence requires action on the part of the petitioner – including one appearing *pro se*. *See Diaz*, 515 F.3d at 155 (suggesting that a *pro se* litigant should inquire "as to whether a pending motion has been decided" after "a substantial period of time has elapsed," in that case nine months); *see also Miller*, 305 F.3d at 496 (noting that the *pro se* petitioner "did not passively await decision," but acted reasonably in filing a motion asking the court to rule on his application after approximately nine months); *Drew*, 297 F.3d at 1288 (criticizing the *pro se* petitioner for sending only one letter inquiring about this case); *Emp. Painters' Trust v. Ethan Enters.*, 480 F.3d 993, 997 n.7 (explaining that diligence requires "keeping apprised of recent filings").

The dissent inquires why we would require habeas petitioners to pursue a "steady stream of correspondence" regarding filings that have been pending for a considerable time. *Dissenting Opinion*, p. 14. The answer is obvious: to demonstrate the required diligence on the part of the habeas petitioner. *Cf. Drew*, 297 F.3d at 1288 (criticizing the sending of only one letter).

The dissenting opinion rests its analysis largely on the failure of the California Supreme Court to notify Fue of its decision. *See Dissenting Opinion*, pp. 15–17. However, the failure of the court to notify Fue of its decision has absolutely nothing to do with Fue's diligence. Rather, the failure of the court to notify Fue satisfied the extraordinary circumstances prong of the equitable tolling equation. *See Ramirez*, 571 F.3d at 997 ("We agree with our sister circuits that a prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling *if* the prisoner has acted diligently . . . ") (citations and internal quotation marks omitted) (emphasis added). The diligence requirement is separate and apart from the extraordinary circumstances requirement. The extraordinary circumstances requirement focuses on the action(s) of a party or parties outside the petitioner's control. *See Sossa*, 729 F.3d at 1229 (describing extraordinary circumstances as those circumstances "beyond a prisoner's control" and attributable to "an external force"). The diligence requirement focuses squarely on the habeas petitioner's actions, or lack thereof. *See Holland*, 560 U.S. at 649 (clarifying that a habeas petitioner warrants equitable tolling only if "*he* has been pursuing his rights diligently") (citation omitted) (emphasis added).

We readily acknowledge that we previously determined in *Huizar v. Carey*, 273 F.3d 1220, 1224 (9th Cir. 2001), that a prisoner was diligent despite a longer delay. However, in *Huizar*, the prisoner engaged in a "steady stream of correspondence" with a non-responsive court. *Id.* The prisoner first contacted the court two months after he delivered his state habeas petition to prison officials. *See id.* Twenty-one months later, after receiving no response from the court, the prisoner had his sister mail a second copy of the petition by certified mail. *See id.* After five months more of waiting, the prisoner sent yet another letter to the court, his fourth mailing. *See id.* It was the prisoner's "steady stream of correspondence . . . [that] show[ed] reasonable diligence on his part." *Id.*

There is really no credible comparison to be made between Huizar and Fue. Huizar was also entitled to rely on notice from the California court. But he didn't just wait for notice from the court. He undertook an investigation within a reasonable time after he expected a decision to have been rendered.[3] By contrast, Fue sat on his hands and did not

---

[3] Although the *Huizar* opinion did not so explain, superior courts in California at the time Huizar filed his state petition were required to "rule on a petition for writ of habeas corpus within 30 days after the petition [was] filed." Cal. R. Ct. 4.551(a)(3)(A)(1996); *see also* Cal. R. Ct. 4.550(a) (providing that Rule 4.551 "applies to habeas corpus proceedings in the superior court"); *Jackson v. Superior Court*, No. B164449, 2003 WL 22146535, at *1 (Cal. Ct. App. Sept. 18, 2003) (applying the 30-day rule). Judge Bybee correctly observes that the California Supreme Court does not have an analogous deadline for ruling on habeas petitions, so Fue did not know exactly when the court would issue its opinion. *Dissenting Opinion*, p. 15 n.1. But that fact is quite beside the point. Fue was undeserving of equitable tolling regardless of what he knew (or didn't know) about his petition because it was unreasonable for him not to take

bother to inquire into the status of his petition, even after "a substantial period of time" – more than a whole year – "elapsed." *Cf. Diaz*, 515 F.3d at 156 (involving less than a year delay). In addition, Huizar didn't stop with only one mailing to the state court. Although the dissent takes issue with a "steady stream of correspondence" as reflecting due diligence, *see Dissenting Opinion*, p. 14, we explicitly held that Huizar's "steady stream of correspondence . . . would show reasonable diligence on his part." *Huizar*, 273 F.3d at 1224.

Our colleague in dissent seeks to characterize our holding in *Huizar* as sanctioning a delay of twenty-one months in contacting the state court. *See Dissenting Opinion*, p. 17. However, that characterization completely ignores Huizar's initial inquiry after two months, and Huizar's "steady string of correspondence" thereafter that persuaded us that Huizar was reasonably diligent. *See Huizar*, 273 F.3d at 1224. Fue's single inquiry after fourteen months comes nowhere close to the diligence exercised by Huizar. *Cf. Drew*, 297 F.3d at 1288 (concluding that the sending of a single letter did not establish reasonable diligence).

Fue simply did not display diligence similar to that displayed by Huizar. Rather, he waited fourteen months before initially inquiring into the status of his state habeas petition. There was no indication in the record that any impediment prevented Fue from inquiring earlier about the status of his habeas petition. The dissenting opinion seeks to blunt the force of Fue's dilatoriness by pointing to the relative alacrity of Fue's filing in federal court after receiving notice

---

*any action* to investigate its status for as many as fourteen months after filing.

from the state court. *See Dissenting Opinion*, p. 19. However, it is the pre-notice lack of diligence that dooms Fue's claim of diligence. *See Huizar*, 273 F.3d at 1224 (focusing on pre-notice diligence). Fue's unwarranted delay persuades us that he failed to act with sufficient diligence to justify application of the equitable tolling doctrine. *See Emp. Painters' Trust*, 480 F.3d at 999 n.7 ("Once a party appears in a civil action it is responsible for the diligent presentation of its case, which includes, inter alia, keeping apprised of recent filings . . .").[4]

Finally, the dissent takes issue with the "fine line" drawn by our holding. *Dissenting Opinion*, p. 20. However, our colleague in dissent would also draw a line. He merely prefers that the line be drawn on the other side of the facts in this case. The fact of the matter is that regardless of where the line is drawn, cases will fall on either side of the line. We are persuaded that our conclusion is more consistent with the purpose of the Act, to "encourag[e] prompt filings in federal court in order to protect the federal system from being forced to hear stale claims. . . ." *Baek v. Long*, No. 13CV421-MMA(BLM), 2013 WL 6587873, at *4 (S.D. Cal. Dec. 16, 2013) (quoting *Guillory v. Rose*, 329 F.3d 1015, 1018 (9th Cir. 2003).

The dissent speculates that if Fue had been more diligent by six weeks, "perhaps then the majority would say he was sufficiently diligent." *Dissenting Opinion*, p. 20. Perhaps so. But that is not the case before us. Fue did not inquire of

---

[4] The fact that Fue's case has been pending in this Court for over fourteen months, *see Dissenting Opinion*, p. 24 n.5, in no way excuses his lack of diligence in the state court. *See Emp. Painters' Trust*, 480 F.3d at 999 n.7 (requiring a litigant to keep track of court filings).

the state court six weeks earlier, and we are persuaded that the length of his delay and the attendant circumstances place his case squarely on the non-diligent side of the scale.

We are not persuaded by the dissent's reliance on *Hardy v. Quarterman*, 577 F.3d 596 (5th Cir. 2009), *see Dissenting Opinion*, p. 21. The delay in *Hardy* was eleven months as opposed to the considerably longer period of fourteen months here. Performing the same line-drawing analysis we have undertaken, the Fifth Circuit concluded that the eleven-month delay was closer to the eight-month delay in one case than to the thirty-month delay in a different case. *See Hardy*, 577 F.3d at 599. It is also completely understandable that the Fifth Circuit would consider a delay of eleven months to be comparable to the delay of nine months discussed in *Diaz* and *Miller*. The Fifth Circuit was not called upon to decide the diligence of a habeas petitioner who delayed longer, and we do not know how it would have ruled. But we do know that at least two district courts in California have determined that delays similar to Fue's reflected a lack of reasonable diligence. *See Baek*, 2013 WL 6587873, at *5 (holding that a delay of thirteen months "does not constitute the required diligence") (citations and footnote reference omitted); *see also Retano v. Janda*, No. CV 12-8214-GW (OP), 2013 WL 6499702, at *4 (C.D. Cal. Dec. 10, 2013) (concluding that a delay of approximately fifteen months "indicate[d] a lack of diligence"). Fue's fourteen-month delay falls squarely between these two California federal court decisions finding a lack of diligence.

We can dispose of the dissent's reliance on *Knight v. Schofield*, 292 F.3d 709 (11th Cir. 2002), in short order. *See Dissenting Opinion*, p. 22. As the dissent acknowledges, the Eleventh Circuit almost immediately distinguished *Knight*.

*See Dissenting Opinion*, p. 22 n.4; *see also Drew*, 297 F.3d at 1288 & n.3 (distinguishing *Knight* and concluding that a sixteen-month delay reflected a lack of diligence). Although the dissent takes issue with the basis upon which the Eleventh Circuit distinguished its prior precedent, *see Dissenting Opinion*, p. 22 n.4, the fact remains that *Knight* was distinguished by the same court that authored it.

The dissent accuses both the majority and the Eleventh Circuit of relying "on an instinctive sense of what *seems* like a long time . . ." *Dissenting Opinion*, p. 24 (emphasis in the original). However, the *exact* same point could be made regarding the dissent's view.

At bottom, comparing the facts of this case to those within and without our circuit leads us to the conclusion that the district court committed no error in denying Fue's request for equitable tolling, In particular, unlike the prisoner in *Huizar*, Fue took no initiative to inquire about the status of his petition within a time frame we and other courts have recognized as reasonably diligent. The district court properly dismissed Fue's petition as untimely.

**AFFIRMED**.

---

BYBEE, Circuit Judge, dissenting:

In one of his brilliant books explaining physics to non-rocket scientists, Brian Greene wrote that "[o]f the many strange things Einstein's work revealed, the fluidity of time is the hardest to grasp." Although "everyday experience convinces us that there is an objective concept of time's

passage," in fact, "[t]he passage of time depends on the particulars . . . of the measurer." Brian Greene, The Hidden Reality: Parallel Universes and the Deep Laws of the Cosmos 66 (2011). As in physics, so in law. At least in equity. In a case that turns on equitable tolling, unlike one involving jurisdictional limitations, we must measure time "with awareness of the fact that specific circumstances, often hard to predict in advance, . . . warrant special treatment in an appropriate case." *Holland v. Florida*, 560 U.S. 631, 650 (2010).

No one disputes that Steven Fue has alleged extraordinary circumstances, beyond his control, that caused him to file his federal habeas petition after the statutory deadline. The California Supreme Court decided his habeas petition six months after he filed it, but the court never told Fue. In fact, when he wrote the court to inquire about his petition, the Clerk told him the court had "no record" of his petition. We have held that this very situation can justify equitable tolling of AEDPA's statute of limitations if the prisoner has acted with reasonable diligence. *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009).

Yet, with Newtonian precision, the majority holds that Fue did not behave reasonably—and is thus ineligible for equitable tolling—because he waited 14 months before sending a letter to the California Supreme Court asking about the status of his petition. Maj. Op. at 5–6. But I fail to see how this was at all unreasonable. The California Supreme Court is required to "promptly" send a copy of its decisions to prisoners. *See* Cal. R. Ct. 8.387(a)(2), 8.532(a). Fue had not received a copy of any decision, and no statute or rule requires prisoners to seek periodic status updates from the California Supreme Court. Perhaps we should expect

prisoners to inquire with the court after an unusually long time has passed with no decision, but 14 months is not an unusually long time for a court—least of all the California Supreme Court—to decide a petition. *See Huizar v. Carey*, 273 F.3d 1220, 1224 (9th Cir. 2001) (21 months "not an unusually long time [for a prisoner] to wait for a court's decision").

Why would we require Fue, and other prisoners like him, to pursue a "steady stream of correspondence," Maj. Op. at 8, with the California Supreme Court to verify that the court has followed its own rules?  This is a burden I expect neither the prisoners nor the California Supreme Court will welcome.  I respectfully dissent.

I

"The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 560 U.S. at 653 (citations and internal quotation marks omitted).  Reasonable diligence is not an exacting standard.  It simply requires "the effort that a reasonable person might be expected to deliver under his or her particular circumstances."  *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011).

The key "particular circumstances" in this case are as follows:  Fue, proceeding without the aid of counsel, filed a habeas corpus petition with the California Supreme Court. Unlike superior courts in California, the California Supreme

Court has no deadline for deciding habeas petitions.[1]  And, unlike habeas proceedings in the superior courts, no rule permits prisoners proceeding before the California Supreme Court to file a request for decision after a certain amount of time has elapsed.[2]  The California Supreme Court has, however, obligated itself by rule of court to "promptly" inform prisoners when it renders a decision on their habeas petitions.[3]  Habeas petitioners such as Fue may rely on this rule and look for "prompt[]" delivery when the California Supreme Court reaches a decision.  Conversely, relying on this rule, they may reasonably assume the court has not reached a decision when the clerk has not "sen[t them] copies showing the filing date."

We are asked to decide what effort a reasonable person might be expected to undertake in the circumstance in which

---

[1] Superior courts "must rule on a petition for writ of habeas corpus within 60 days after the petition is filed."  Cal. R. Ct. 4.551(a)(3)(A); *see also* Cal. R. Ct. 4.550(a) (providing that Rule 4.551 "applies to habeas corpus proceedings in the superior court").  Although the California Supreme Court has no analogous deadline for deciding habeas petitions, it does have a deadline for deciding petitions for review of lower court decisions.  *See* Cal. R. Ct. 8.512(b) (petitions for review filed with the California Supreme Court are "deemed denied" if the court does not rule on the petition or grant an extension within 60 days).

[2] *See* Cal. R. Ct. 4.551(a)(3)(B) ("If the [superior] court fails to rule on the petition within 60 days of its filing, the petitioner may file a notice and request for ruling.").

[3] *See* Cal. R. Ct. 8.532(a) ("The Supreme Court clerk must promptly file all opinions and orders issued by the court and promptly send copies showing the filing date to the parties . . . ."); *see also* Cal. R. Ct. 8.387(a)(2) (providing that Rule 8.532(a) governs the filing of the California Supreme Court's decisions in habeas corpus proceedings).

the court has not sent notice of a decision. In answering this question, we must keep in mind that, "[f]rom a litigant's perspective, it is a difficult, if not impossible endeavor, to estimate how long a reviewing court will take to decide a [petition]." *Miller v. Collins*, 305 F.3d 491, 496 (6th Cir. 2002). Understanding this, courts have "see[n] no point in obliging a *pro se* litigant to pester a state court with frequent inquiries as to whether a pending [petition] has been decided, at least until a substantial period of time has elapsed." *Diaz v. Kelly*, 515 F.3d 149, 155 (2d Cir. 2008).

In my view, a "reasonable person," knowing that the court will send notice when a decision has been made, might refrain from asking the court about a petition until the petition has remained pending for an unusually long time. How long is unusually long depends, of course, "on the particulars . . . of the measurer." In light of the "particulars" of a pro se prisoner, and perhaps thinking of our own docket, we have charitably allowed that even 21 months is "not an unusually long time to wait for a court's decision." *Huizar v. Carey*, 273 F.3d 1220, 1224 (9th Cir. 2001).

In *Huizar*, a California superior court failed to respond to a state prisoner's habeas petition. Knowing that the superior court must act within 60 days, Cal. R. Ct. 4.551(a)(3)(A), Huizar first inquired about his petition two months after it was filed. When he got no reply he waited 21 months before mailing a second copy to the same court. He waited five months, got no reply, and sent another letter. Huizar went a total of 28 months before learning that his petition had not been received by the superior court and then another four months before filing his federal petition. *Id.* at 1222. The district court dismissed his federal petition as untimely. We reversed, however, and instructed the district court to

determine on remand if Huizar's efforts were as he claimed them to be and, if so, to "deem his petition timely and consider it on the merits." *Id.* at 1224.

It is very difficult to square *Huizar* with our decision in this case. The majority attempts to distinguish *Huizar* on the ground that the prisoner there engaged in a "steady stream of correspondence" with a non-responsive court. Maj. Op. at 8–9. But that misses the point. The point is that *Huizar* found a delay of 21 months between correspondences followed by a delay of five months to be a "steady stream of correspondence." Given the misleading answer Fue received from the Clerk of the California Supreme Court in response to his January 31, 2011 inquiry (I discuss the details of the Clerk's response below), Fue, hardly less than Huizar, sufficiently corresponded with a non-responsive court.

Fue never delayed so much as 21 months. Indeed, in comparison with *Huizar*, he was downright chatty. After 14 months and no word from the California Supreme Court, Fue took the initiative and sent a letter to the Clerk of the California Supreme Court. A prisoner could show his diligence by sending inquiries to a state court each and every day after the case has been submitted. Yet that does not mean that a prisoner who shows something less than *hyper* diligence in initially reaching out and then following up with a state court has acted unreasonably. In other words, simply because Fue was less proactive than some other prisoner does not mean Fue has acted *unreasonably*. In light of Fue's pro se status and the California Supreme Court's obligation to notify him of its decision, I believe Fue's actions were entirely consistent with what a reasonable person might be expected to do.

II

Ordinarily, a prisoner must show reasonable diligence not only before but also after receiving delayed notice of a state court's decision. *Miller*, 305 F.3d at 496 (considering whether the petitioner "acted promptly after receiving notice of the appellate court's decision"); *see, e.g.*, *Earl v. Fabian*, 556 F.3d 717, 724 (8th Cir. 2009) (petitioner who filed habeas petition more than eight months after receiving delayed notice failed to pursue rights with diligence). Here, however, Fue need not meet that requirement because he did not receive notice of the California Supreme Court's decision until after he filed his federal habeas petition.

The majority says Fue received notice when the Clerk of the California Supreme Court informed him, in a letter dated February 3, 2011, "that his habeas case was no longer active." Maj. Op. at 4. But the Clerk told him no such thing. The Clerk's February 3, 2011 letter stated in full: "This will acknowledge receipt of your letter received February 3, 2011, I checked our dockets and found no record of a pending petition for writ of habeas corpus having been filed on or about November 2009." The misleading implication of the Clerk's response was that the court never received Fue's November 2009 petition. Certainly that was how Fue understood it. He "did not know what to think of it," so he wrote to his appellate lawyer and asked, "What should I do?" The majority understands this letter differently; it thinks the letter informed Fue "that his case [was] no longer active" and that there was therefore "no pending matter[] before the court." Maj. Op. at 4 n.2. I do not think that is a fair reading of the Clerk's language quoted above. Even Fue's lawyer understood the Clerk's response to mean the court never received Fue's petition. He told Fue to "explain to the Court

. . . that you already sent your petition" and to seek leave to file the petition again.

Taking the letter at face value, Fue instead decided to file his federal habeas petition immediately. In the questionnaire attached to his petition, he wrote that the date of the California Supreme Court's decision on his habeas petition was "N/A" and the result was "waiting for a response still." Fue claims—and the State does not dispute—that "the first [he] knew of the denial was when he read the state's motion to dismiss the petition in this case." By that time, of course, he had already filed his federal habeas petition, so his need to act with post-notice diligence was moot.

In any event, even if the Clerk's February 3, 2011 was sufficient to put Fue on notice that his state habeas petition had been denied, Fue still acted with complete diligence after receiving notice of the court's decision. Based on the facts as he understood them, Fue expected to have three months after receiving notice of the California Supreme Court's decision to prepare and file his federal habeas petition. (He actually had six months, but his appellate lawyer misinformed him.) Yet once he learned that the California Supreme Court had "no record" of his petition, he filed his federal petition within 32 days. *Cf. Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (petitioner who filed federal habeas petition within one month of receiving delayed notice pursued rights with diligence). And Fue was not just sitting on his hands; those 32 days included the time he took to write his appellate lawyer for advice on how to proceed and then to wait for his lawyer's response. These actions clearly show that Fue made "the effort that a reasonable person might be expected to deliver under his or her particular circumstances." *Busby*, 661 F.3d at 1015.

III

The majority bases its holding on what other circuits have held in "similar cases." Maj. Op. at 5. But the majority does not effectively deal with the cases most similar to ours, and the unreasonable-delay cases the majority relies on are either unpersuasive or not similar at all.

The majority divides the cases into two groups. First are the cases in which the petitioner inquired about a petition after less than 10 months; in these cases, the courts found, the petitioners acted with sufficient diligence. *Id.* at 5. Then are the cases in which the petitioner waited sixteen months or more; those petitioners were deemed not to have acted with sufficient diligence. *Id.* The majority reasons that because Fue's 14 months is "closer to the majority of cases finding a lack of reasonable diligence," Fue was therefore not reasonably diligent. *Id.* In other words, the majority effectively argues, because 14 months is closer to 16 months than it is to 10 months, Fue's petition cannot be reviewed.

While I cannot argue with the mathematical precision of the majority's approach, this certainly draws a fine line. *See Busby*, 681 F.3d at 1015 ("Equitable tolling is not the arena of bright-lines and dates certain[.]"). Under this reasoning, if Fue had only inquired just six weeks earlier, his delay of 12 and a half months would have been closer to 10 months than to 16; perhaps then the majority would say he was sufficiently diligent. But the majority's line-drawing is an exercise in rule making, not an exercise in equity. Although the majority does not create a hard deadline—such as might be found in a statute of limitations—it has created an asymptote, a limit that approaches a finite number, around 13 months.

The majority draws the line finer still by its treatment of the Fifth Circuit's decision in *Hardy v. Quarterman*, 577 F.3d 596 (5th Cir. 2009). The court there held that a prisoner acted reasonably in waiting 11 months before contacting the Texas Court of Criminal Appeals about his petition. *Id.* at 599. Two circumstances were particularly relevant to the court: first, Hardy's pro se status, and second, the fact that the court had a legal duty to notify him when it issued a decision. *Id.*; *see also id.* at 598 (noting that, under Texas rules of appellate procedure, "[t]he [Texas Court of Criminal Appeals] is . . . legally obligated to notify a petitioner once a decision has been rendered on his habeas petition"). Looking to its own prior decisions, the court reasoned that "[Hardy's] eleven-month wait is much more analogous to the eight months the petitioner in [one case] allowed to elapse than the two and a half-year wait in [another case]." *Id.* at 599. The court also cited two of the cases cited by the majority here—*Diaz v. Kelly*, 515 F.3d 149, 155 (2d Cir. 2008), and *Miller v. Collins*, 305 F.3d 491, 495–96 (6th Cir. 2002)—and reasoned that "the timing of Hardy's inquiry is not significantly different from time periods found to be reasonable by other circuits." *Id.*

Our case is quite similar to *Hardy*. Fue, like Hardy, was representing himself in his habeas proceedings before the California Supreme Court. The California Supreme Court, like the Texas Court of Criminal Appeals, is legally required to notify prisoners "promptly" when it has rendered a decision on their habeas petitions. *See* Cal. R. Ct. 8.387(a)(2), 8.532(a). And the timing of Fue's inquiry is not significantly different from the time period found reasonable in *Hardy*, despite the majority's assertion that a fourteen-month delay is "considerably longer" than eleven months. Maj. Op. at 11.

Another similar case the majority fails to appreciate is *Knight v. Schofield*, 292 F.3d 709 (11th Cir. 2002). In that case, the court held that a prisoner's delay of *18 months* before inquiring about the status of his petition was reasonable. If Knight's 18-month delay was reasonable, Fue's 14-month delay should be reasonable too.[4]

Of the three cases cited by the majority that found a prisoner's delay unreasonable, two involved much more delay than 14 months (one was 21 months, the other 24 months), and both of those cases involved a prisoner who was represented by counsel. *See LaCava v. Kyler*, 398 F.3d 271, 276 (3d Cir. 2005) (noting that "LaCava was not entitled to personal notice of the Pennsylvania Supreme Court's order" because he "was represented by counsel during his state collateral proceedings"); *Cousins v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002) (declining to grant equitable tolling

---

[4] Soon after *Knight* was decided, the Eleventh Circuit distinguished it on the ground that a court clerk told Knight when he filed his petition that he would be notified as soon as a decision was issued. *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1288 n.3 (11th Cir. 2002). But I believe the *Drew* majority was wrong to distinguish *Knight* on this ground. The court in *Drew* treated equitable tolling as though it required equitable estoppel. *See id.* ("[M]ost importantly, [Drew] received no assurances from the Clerk on which to rely."). But equitable tolling does not; it only requires reasonable diligence.

Fue, like Drew, "had every reason to expect that the court would notify him once it ruled on his petition; every litigant knows that the court is supposed to inform the parties when a result has been reached." *Id.* at 1300 (Barkett, J., dissenting). Indeed, as explained above, the California Supreme Court's rules obligate it to notify prisoners promptly when it rules on their habeas petitions. To suggest "that it would make all the difference to [Fue]'s case had the Clerk of the [California Supreme Court] told him, at the time he filed his petition, that he would be notified of the result [would be] disingenuous." *Id.*

because "[t]he petition at issue in this case remained submitted but unfiled for almost two years, at least in part because counsel failed adequately to investigate the status of the case"). These decisions are not similar to ours, so we should not follow them.

That leaves just one case: *Drew v. Department of Corrections*, 297 F.3d 1278 (11th Cir. 2002), which determined that a prisoner's 16-month delay before contacting the court constituted a lack of reasonable diligence. Notably, however, *Drew* never held that a 16-month delay is unreasonable as a matter of law; it held that it was not *clear error* for the district court to determine that Drew's 16-month delay was unreasonable. *Id.* at 1289–90. Indeed, in the face of statistics showing that Drew's 16-month wait was not far off of the average time courts take to rule on petitions like his, the *Drew* majority refused to consider the evidence. To consider the evidence, the majority reasoned, would amount to "*de novo* fact-finding" and would "eviscerate[]" the trial court's central role. *Id.* at 1289–90 & n.4; *see also id.* at 1289 ("Even if there were some reasonable debate as to Drew's diligence, . . . the dissent offers no reason to find clear error . . . ."). Given that the majority here reviews the district court's diligence determination de novo, Maj. Op. at 4, it makes little sense to hold that Fue's 14-month delay was unreasonable because it was "close" to the 16-month delay the *Drew* majority deemed unreasonable under a highly deferential standard of review.

Even if we set aside the fact that *Drew* was decided under clear-error review, the decision is unpersuasive. I see no basis articulated in the *Drew* majority's opinion for its "finding . . . that a sixteen month 'delay' before contacting the court about the status of the petition constitutes a lack of

diligence." *Id.* at 1301 (Barkett, J., dissenting). The *Drew* majority's opinion, much like the majority's opinion here, appears to be based on an instinctive sense of what *seems* like a long time; it does not appear to be based on evidence of what any reasonable pro se prisoner would know or do under the circumstances.

If Drew's 16-month delay was indeed close to the average amount of time a court takes to decide petitions like his, it would seem to me that Drew acted well within the bounds of reasonable diligence. *See id.* at 1300–01. Ultimately, however, such proof is unnecessary. Recognizing that it may be nearly impossible for a pro se prisoner to know how long it may take a court to decide a petition, *Miller*, 305 F.3d at 496, a prisoner should be able to trust that the court will send notice when a decision has been made—at least until the petition has remained pending for an unusually long time. And neither 16 months nor 14 months is an unusually long time. *Huizar*, 273 F.3d at 1224.[5]

At bottom, the only case cited by the majority that comes even remotely close to ours (*Drew*) involved a longer delay, was decided under a different and highly deferential standard of review, and refused to consider evidence that the delay involved there in fact was reasonable. We should not feel bound by it.

\* \* \*

---

[5] Indeed, it has taken our court a good deal longer than 14 months to decide Fue's case. The wheels of justice often turn slowly, and it is not unreasonable for a pro se prisoner to be aware of that fact and act accordingly.

Since it is only the extraordinary case in which the state court fails to send notice of a decision, a rule requiring prisoners to seek early and frequent updates would be a waste of time for almost all prisoners, would be a heavy administrative burden for state courts, and would only minimally serve the interest of preventing stale federal habeas petitions. Fue affirmatively inquired with the California Supreme Court about the status of his petition after 14 months, he sent a letter to his appellate attorney, and he then promptly filed his federal habeas petition. In doing all this, Fue acted just as we should expect a reasonable person in his shoes to act. I would give him his day in federal court. Accordingly, I dissent.